## WARNER *vs.* THE PEOPLE, *ex rel.* Conner.

Where the constitution provides for the appointment to an office in a particular manner, the legislature has no power to create a new office for the performance of the same, or the principal part of the same duties, and to direct the appointment to be made in another manner.

But the legislature may regulate and add to or diminish the duties or the fees of a constitutional office. *Per* WALWORTH, *chancellor.*

The act authorizing the appointment of a clerk of the *court of common pleas* of the city and county of New-York by the first and associate judges of that court (*Stat.* 1843, *p.* 63,) is unconstitutional and void; for the reason that the duties of that office appertain to the office of *clerk of the city and county of New-York,* whose appointment in another mode is provided for by the constitution.

If the appointment was one which the constitution had directed to be made by the court of common pleas, the act would be void for directing it to be made by the first and associate judges only, to the exclusion of the mayor, recorder and aldermen, who are also members of that court.

ON error from the supreme court. The attorney general on the relation of James Conner, in January term, 1844, filed an information in the court below in the nature of a *quo warranto* against Andrew Warner, for an alleged intrusion by the latter into the office of *clerk of the court of common pleas* of the city and county of New-York. The information sets forth that the defendant, without legal warrant, grant or right, has for more than thirty days last past held, used, and executed the *alleged* office and performed the duties of clerk of the court of common pleas for the city and county, and of clerk of the county court of the said city and county; and that he claims to be the clerk of the

said court of common pleas, and to have the custody of the papers, and to perform the duties of that court, and to receive the compensation and emoluments allowed by law to the clerks of courts, and to the county clerk for such services, and to have and enjoy the liberties, privileges, franchises and emoluments appertaining to the office of clerk of the common pleas and clerk of the county courts of the city and county of New-York, which said office, liberties, &c. the defendant, during the term aforesaid has (as the information alleges) usurped, intruded into and unlawfully held, in contempt of the people, &c. The information proceeds to aver that the relator, during the time aforesaid, was, and still is, and continually until the first day of January, 1847, will be rightfully entitled to hold, use, and execute the office of *clerk of the city and county of New-York,* and all the liberties, privileges, &c. to the said office appertaining, and to have the custody of all books, records and papers relating to the said court of common pleas and of the seal thereof, and to perform all the duties of clerk of the said court of common pleas ; and to be and act as the clerk of the county court for the said city and county, and to receive the compensation allowed to clerks of courts and the county clerk for such services.

The defendant pleaded in bar setting out the act relating to the court of common pleas of the city and county of New-York, passed April 10th, 1843, (*Stat.* 1843, *p.* 63,) which provides for the appointment of a clerk of the court of common pleas by the first and associate judges of that court, who, it is enacted, shall for that purpose be deemed the court ; and averred that pursuant to the act he, the defendant, was appointed on the first day of May, 1843, by the then first and associate judges, to be the clerk of the said court of common pleas for the city and county of New-York, and that he had taken the oath and given the bond prescribed by law ; traversing the title of the relator to the office of clerk of the city and county of New-York *and* of the court of common pleas, &c. The attorney general demurred to the plea. Joinder. The supreme court, after argument, gave judgment for the people, and adjudged that the defendant be *ousted* from the office which he claimed and that the plaintiffs

recover the costs of the prosecution; and also adjudging that the relator was the clerk of the city and county of New-York, and as such was entitled to the books &c. relating to the court of common pleas, and to the seal, and to perform the duties of clerk of that court, and to act as clerk of the county court for said city and county, and to receive the compensation allowed to clerks · of courts and to the county clerks for such services. Upon this judgment the defendant brought error to this court. The reasons of the judges of the supreme court were assigned as follows, by

BRONSON, J. It will not be necessary to recite any portion of the charter or early laws relating to the city of New-York; for it is not, and cannot be denied that at the time the constitution was framed and adopted, there was a court of common pleas for the city and county of New-York, and a clerk of the city and county, who was the clerk of that court. The clerkship of the court was not a mere incident to the office of clerk of the county, but was a part (a) of the office. Then came the constitution of 1821, which provides, that " sheriffs and clerks of counties, including the register and clerk of the city and county of New-York, shall be chosen by the electors of the respective counties." (Art. 4, § 8.) Under this provision the clerk of the city and county of New-York has been chosen by the electors ever since the constitution was adopted, and has been clerk of the court of common pleas down to the time when the defendant was appointed under the act of 1843. (Stat. 1843, p. 63.) The first section of that act provided, that the clerk of the court of common pleas, for the city and county of New-York, should be appointed by the court; and that this new officer should be and act as the clerk of the county court. The question is whether the legislature had the constitutional power to pass such a law. I think it had not. In effect this statute divides the office of the clerk of the city and county of New-York into two parts; and as to the largest share, in point of duty and emolument, takes

(a) See Kent's Charter, p. 22, § 15, p. 71 to 73, §§ 27, 29, p. 166; 4 Web. 329; 5 id. 265; 1 R. L. 338, §§ 11, 12; 2 id. 402, §§ 159, 160; Stat. 1818, p. 144, ch. 162; Stat. 1821, p. 64.

the choice of the officer from the electors of the county, and gives the appointment to the court. If this can be rightfully done, I do not see any security for the residue of the office. The legis- lature may take that also, and give the appointment of the officer to some court, or to the governor and senate; and thus the con- stitutional provision for a choice by the electors would be com- pletely nullified. I do not doubt that the legislature can regulate the duties, and reduce or take away the fees of the officer, and it may perhaps abolish the office. But so long as the duties and emoluments of the office remain, the choice of the officer belongs to the electors of the county. They cannot be deprived of their right by changing the name of the office, nor by dividing it into parts, and transferring the selection of one of the officers to another body. If the office may be divided, and the duties be assigned to two officers, both must be chosen by the electors of the county. No other rule will give full effect to the constitution.

*J. T. Brady & G. Wood,* for the plaintiff in error.

1. The act of 1843 (*Stat.* 1843, *p.* 63) providing for the ap- pointment of a clerk of the court of common pleas for the city and county of New-York is not in conflict with the constitution of this state.

2. The constitutional provision for the election or appoint- ment of an officer does not prevent the legislature from abolish- ing, much less from altering, enlarging, diminishing or otherwise regulating the office held by him, or the duties and powers attached to it. The power is unquestionable where, as in this case, the duties which are detached from the office are incidental merely, and the change is not made collusively in order to evade the constitution.

3. At the adoption of the constitution the clerical business appertaining to the court of common pleas was only a subordi- nate part of the office of clerk of the city and county of New- York. It was therefore but an incident to that office. (*Br. Laws, ed. of* 1694, *part* 2, *p.* 64; *Kent's ed. City Charter, pp.* 22, 71, *notes* 41 *to* 43; *Laws* 1821, *p.* 64; 2 *R. S.* 208, § 1; *id.* 215, §§ 22 *to* 24.)

4. The act of 1843 created a new officer whose appointment was not provided for by the constitution, and imposed upon him duties which were before incidentally performed by the clerk of the city and county of New-York, leaving that officer to be still elected in the mode prescribed by the constitution.

5. The clerk under the act of 1843 is appointed in a mode which comports with the spirit and general intent of the con- stitution, inasmuch as his duties relate to the business of courts. The general design of the constitution was that clerks of courts should be appointed by the courts themselves, but they found a class of officers of this grade whose principal functions were administrative, and therefore directed their election by the people, though as the laws then stood they incidentally acted as clerks of courts.

6. The appointment of these new clerks, conferred on the first and associate judges does not alter in any way the charter of the city of New-York. ( *The People* v. *Morris,* 13 *Wend.* 325 ; *The Same* v. *Purdy,* 2 *Hill,* 31 ; *The Same* v. *The Albany Common Pleas,* 19 *Wend.* 27 ; *The Same* v. *The Mayor &c. of New-York,* 25 *id.* 680.)

7. The right and duty of the county clerk to act as the clerk of the common pleas of the city was constitutionally put an end to by the act of 1843, (§ 4,) and *he* has no right to claim the office or its emoluments, whoever may be entitled thereto.

*B. F. Cutting & J. Van Buren,* (attorney general,) for the defendant in error.

1. The act of 1843 is a violation of the eighth section of the fourth article of the constitution of this state, and is therefore void. By this constitutional provision the clerk of the city and county of New-York, as well as the clerks of counties, is directed to be chosen by the people. When the constitution was adopted, the clerk of the city and county of New-York was, by virtue of his office, the clerk of the court of common pleas. (1 *V. S. Laws,* 169 ; *Kent's City Charter, pp.* 72, 73, §§ 28, 29 ; *Id.* 17, § 9 ; *Id.* 22, § 16 ; *Id.* 71 ; *Id.* 164 *to* 166 ; *Laws* 1787, *ch.* 10 ; *Id. ch.* 72 ; *Laws* 1797, *ch.* 1 ; *Laws* 1806, *ch.* 11 ; *Laws* 1808, *p.* 265, § 1 ; 1 *R. L.*

338, §§ 11, 12; 2 *id.* 402, § 159; *Laws* 1818, *p.* 144; *Laws* 1821, *p.* 64, § 11.). The proceedings of the convention of 1821 shew that it acted with full knowledge of the functions and duties of this office. (*Carter & Stone's Debates, p.* 837.)

The provisions of the ninth section of the same article of the constitution, which provides for the appointment of clerks of courts by the courts themselves, *except those clerks whose appointment is provided for in the preceding section,* necessarily excepts the clerks of counties and the clerk of the city and county of New-York from the purview of that section. By the *preceding* section no clerks are provided for by name. The exception must necessarily therefore° refer to the county clerks and this clerk of New-York. In other words, the furnishing of clerks for the common pleas in New-York and in the other counties was not contemplated by the 9th section, because it had just been provided for in the 8th; and that provision was a direction that they should be chosen by the electors. This construction has always been put upon these provisions of the constitution from the time of its adoption till the enactment of the law of 1843. It is also recognized by *Laws* 1826, *p.* 265. Such cotemporaneous construction is of force in interpreting such provisions. (2 *Inst.* 11, 136, 181; 1 *Story's Com. on Const.* 383.)

But if the appointment to this office is not fixed by the 8th section referred to, it falls under the 9th, and the appointment must be made by the *court* of common pleas. That court, at the time the constitution was adopted, was composed of the first judge and the mayor, recorder and aldermen of the city. The act of 1843 deprives the *court* of this power and vests it in certain of the judges, to the exclusion of others equally entitled to participate. This is hostile to the 9th section. (*The People* v. *The Albany C. P.,* 19 *Wend.* 27, 33; 1 *R. S.* 108, § 15; *Laws* 1823, *p.* 40, § 3; 2 *R. S.* 216, §§ 27 to 30; *Laws* 1840, *ch.* 311; *The People* v. *the Mayor &c. of New-York,* 25 *Wend.* 9, *and per Bronson, J. at p.* 24; *Purdy* v. *The People,* 4 *Hill,* 384.) The appointment to the office of clerk of the city and county of New-York having been definitely fixed by the provisions before referred to, the 13th section of article four has no application to

the case. Upon the argument on the other side, the constitutional provision for the appointment of this officer would be rendered illusory. The legislature could make the situation merely nominal by enacting that its duties should be performed by officers appointed in some other mode. The intention was that a clerk with *the same general powers and functions* with those then attached to the office should be chosen by the electors.

II. But if the act under consideration is in other respects constitutional, it required to be passed by a two-thirds vote. It derogates from the right of the mayor, recorder and aldermen as judges of the court, secured by the charters of 1686 and 1736, and by various legislative acts; and in this respect as well as in excluding the clerk of the city and county from the clerkship of the court, *alters* the charter of the city. (*Purdy* v. *The People,* 4 *Hill,* 384; *The People* v. *Jones,* 18 *Wend.* 601; *The People* v. *Richardson,* 4 *Cowen,* 113; *Rex* v. *Leigh,* 4 *Burr.* 2143; *The People* v. *The Utica Ins. Co.,* 15 *John.* 388.)

THE CHANCELLOR. The question presented for consideration in this case is whether the act of April, 1843, which detached the clerkship of the court of common pleas of the city and county of New-York from the clerk of the city and county elected by the people, and gave the appointment to three of the judges of that court, is not unconstitutional and void. The eighth section of the fourth article of the constitution provides that clerks of counties, *including the clerk of the city and county, of New-York,* shall be chosen by the electors of the respective counties. And the next section requires clerks of courts, except those whose appointment is provided for by the eighth section, to be appointed by the courts of which they are clerks. Special provision is also made, in the 13th section, in relation to the clerkship of the oyer and terminer and general sessions of the peace of the city and county of New-York; which clerkship at the time of the adoption of the constitution was a separate and distinct office from that of the clerk of the city and county, which was then united with the clerkship of the court of common pleas as organized under the act of 1821.

It is evident from the exception contained in the 9th section of the article before referred to, that the framers of the constitution intended to make the clerkships of certain courts elective, under the designation of clerks of counties, and of the clerk of the city and county of New-York. By the common law there were no officers who were properly denominated clerks of counties; nor was there any statute in this state providing for the appointment of officers by that name. In England, there was in each county a clerk of the peace who was appointed by the *custos rotulorum* of the county, and was clerk of the court of general sessions of the peace. The sheriffs also held courts which were called county courts; and such sheriffs had the appointment of the clerks of such courts, who were sometimes called county clerks, though they were more properly styled clerks of the county courts. By the ordinance of the 15th of May, 1699, for the establishing of courts of judicature in the province of New-York, inferior courts of common pleas and courts of general sessions of the peace were appointed to be holden in the several counties. The establishment of courts of justice in the colonies was a prerogative of the crown, as well as the appointment of the judges and officers of such courts. And as these courts of common pleas were called county courts, the clerks appointed for them by the colonial governors, in the course of time, acquired the name of county clerks. They were also clerks of the courts of general sessions in their respective counties, and the registers of deeds, &c. That the clerk of the court of common pleas, by virtue of his office, had the recording of deeds, may be inferred from the fact that in one of the early fee bills the clerk of that court has a specific allowance, by the folio, for that service. It is evident, therefore, that in the several counties in this state, except the city and county of New-York, where the jurisdiction of the mayor's court and court of general sessions, under the Montgomery charter, was co-extensive with the limits of the county, the clerkship of the court of common pleas was the original or primary office, and that the clerkship of the peace, and the keeping of the records of the county generally, were *ex officio* powers entrusted to such clerks. By the

original charter of the city of New-York, the city only embraced Manhattan island, and was not therefore co-extensive with the limits of the county. And if there were any separate courts of common pleas and general sessions of the peace existing for the whole county previous to the Montgomery charter, they probably were abolished when the jurisdiction of the mayor's court and of the court of general sessions, which were to be held under that charter, were directed to embrace the limits of the whole county. The county clerkship, therefore, if it ever had existed as a part of the office of the clerk of the court of common pleas of the city and county, became merged in the new clerkship provided for in the charter; or rather by this extension of the clerkship which had existed under the old charter. By the Montgomery charter the common clerk of the city was to be clerk of the mayor's court and also clerk of the peace, and of the general sessions for the city and county of New-York.

All these duties therefore became united in this officer, who was thereafter in fact, if not in name, the clerk of the city and county of New-York. The duties of clerk of the general sessions of the peace and of the court of oyer and terminer, and also of recorder of deeds and mortgages, were subsequently vested in separate and distinct officers, whose appointments are specifically provided for in the new constitution. But at the time of the adoption of the present constitution, the clerk of the city and county of New-York was the clerk of the court of common pleas, which had then recently been re-organized, and the greatest part of the emoluments of his office at that time must have arisen from that source. Previous to that time, nearly every duty which originally belonged to the office, under the Montgomery charter, except that of the clerkship of the mayor's court, which was then called the court of common pleas, had been taken from it and transferred to separate and distinct officers. And the transferring that clerkship by this subsequent act of legislation to a new officer, to be appointed in a mode not authorized by the constitution, was in substance a transferring to him of the office to which the relator had been elected for three years, and was taking from the electors of the city and

county of New-York, the right to choose the officer who was intended to be designated, by the framers of the constitution, by the name of the clerk of the city and county of New-York. If this can be done in relation to this officer, I see nothing to prevent the legislature from taking from the clerks of other counties the duties of clerks of the courts of common pleas and general sessions, and the recording of deeds and mortgages, and appointing separate and distinct officers to discharge those duties, and by a mode of appointment which the framers of the constitution never intended. By directing the mode of appointing particular officers, the framers of the constitution certainly did not intend to take from the legislature the power to regulate the duties of such officers, either by prescribing new duties to be performed, or directing the discontinuance of duties which the public interest no longer required to be performed by any one. And the fees and emoluments of office may not only be reduced by direct legislation, but incidentally by the division of towns and counties, and the erection of new courts, &c. as the public good may from time to time require. But when the legislature, as in this case, assumes the power to take from a constitutional officer the substance of the office itself, and to transfer it to another who is to be appointed in a different manner and to hold the office by a different tenure than that which was provided for by the constitution, it is not a legitimate exercise of the right to regulate the duties or emoluments of the office, but an infringement upon the constitutional mode of appointment.

Again; even if the legislature had the constitutional right to transfer the duties of the clerkship of the court of common pleas to a new officer, to be appointed by the court under the provisions of the ninth section of the fourth article of the constitution, or even to be appointed in the mode prescribed for the appointment of clerks and other officers of courts whose appointment was not otherwise provided for in the constitution, the mode of appointment prescribed by the act of 1843, was not in accordance with either the ninth or the thirteenth sections of that article. The act of 1843 does not give the appointment of the new

Warner *v.* The People.

clerk to the court, but to three of the judges of that court, to the exclusion of the other judges; and declares that those three judges shall be deemed the court for that purpose. It is true, by the general law, all or either of those judges were authorized to hold the court in the absence of the other judges. But the other judges had the right to be present in court if they thought proper to do so, upon all occasions when the court was in session. If an appointment is to be made, by the court, of an officer whose appointment is given to such court by the constitution, any number of the judges who are competent to hold the court for such a purpose may make the appointment if the other judges of the court do not think proper to attend and participate in the act. But the legislature cannot constitutionally deprive any of the proper judges of the court of the right to attend and participate in the appointment of the officer who is to be appointed by such court. By the constitution, all or any of the justices of the supreme court are authorized to hold that court. And therefore the chief justice, if holding the court alone at any of the regular terms thereof, may appoint an officer whose appointment is vested in the court by the constitution. But a law which should give the appointment of the clerks of that court to the chief justice alone, and declare that he should be deemed the supreme court for that purpose, would be a manifest violation of the constitution. In the case under consideration, the plea of Warner does not allege that he was appointed by the court, or that the appointment was made at the time and place prescribed by law for holding such court. He merely states that the three individuals who held the offices of first judge and associate judges of the court, by virtue of the administrative power and authority conferred upon and vested in them by the act of April, 1843, appointed him clerk of the court of common pleas for the city and county of New-York. It does not appear from this plea, therefore, that he was in fact appointed by the court, or at a time and place when any other of the judges of the court had any right to be present and to act as members of the court.

In any view which can be taken of the subject, the plea of

the defendant did not show that he had any legal right to the office, and the plaintiffs in the court below were entitled to judgment upon the demurrer. The right of the relator to act as the clerk of the court of common pleas was not derived from the statutes of the state, but from the charter of the city and the constitution of 1821. The repeal of the statutory provisions on the subject, therefore, did not in any way impair his right to the office. And as the whole of the defendant's plea, which was an entirety, was adjudged bad upon the demurrer, the right of the relator as stated in the information stood admitted upon the record.

The judgment of the supreme court should therefore be affirmed.

JOHNSON, Senator. Two material questions are raised by this writ of error. First, whether so much of the act entitled "An act relating to the court of common pleas for the city and county of New-York," passed April 10, 1843, (*Stat.* 1843, *p.* 63,) as provides for the appointment of a clerk by the first and associate judges of said court, is in conflict with the 8th and 9th sections of the fourth article of the constitution of this state. Secondly, whether under the facts disclosed by the pleadings and admitted by the demurrer, the judgment of the supreme court, if right in *ousting* Warner, is correct in adjudging Conner to have the right and title to the office of clerk of the court of common pleas. It is unnecessary to review the several legislative provisions relating to the clerkship of that court, but it is sufficient to say, that previous to, and at the time of the adoption of the present constitution, the clerk of the city and county of New-York was the clerk of the court of common pleas. It is also a well known historical fact, that clerks of counties at the date of the constitution were clerks of the courts of common pleas in the several counties. Such being then the condition of these offices, it was provided by the section referred to, " that sheriffs and clerks of counties, including the register and clerk of the city and county of New-York, shall be chosen by the electors of the respective counties once in every three years." The

9th section of the same article provides that "the clerks of courts, except those clerks whose appointment is provided for in the preceding section, shall be appointed by the courts of which they respectively are clerks." It will not be denied but that the clerks of those courts, the clerkship of which was then held by a county clerk, come within the exception mentioned in the 9th section, nor but that these courts having clerks thus provided were prohibited from appointing their own. It would seem, therefore, difficult to assign a reason why the clerk of the common pleas of the city and county of New-York does not come within the same exception. It would no doubt be considered an unauthorized act for the legislature to pass a law authorizing the courts of the common pleas throughout the state, to appoint clerks to discharge those duties of the court now discharged by the county clerks. But it is manifest that the framers of the constitution intended to make provision, that the clerk of the common pleas for the city and county of New-York should be elected by the people under the eighth section, because they make another exception for the appointment of the clerk of the court of oyer and terminer and general sessions of the peace in said city, under the 13th section of the 4th article, by specifically requiring such court to appoint its own clerk. No notice by name is taken of the clerk of the common pleas of the city and county of New-York in the constitution, and as the clerk for that city and county was clerk of no other court but the common pleas, unless therefore provision was made for his election under the 8th section, it would follow that the constitution left the court of common pleas for that city and county without any clerk, or the power of appointing one, unless under the provisions of the 9th section, which, as has been stated, is confined to cases not provided for by the preceding section.

Was the appointment of the defendant below by the first judge and the two associate judges, an appointment by the *court* within the true meaning and intent of the 9th section ? At the time of the adoption of the constitution, the court of common pleas was composed of the first judge, the mayor, recorder and aldermen of the city. No valid law has since

been passed excluding the mayor, recorder, or aldermen from the right to sit as judges in that court; and unless the legislature has power to designate any number of the judges, and make them the court *pro hac vice*, the appointment of the defendant below was not in accordance with the constitution. There is no warrant for designating a portion of the judges of a court to perform a duty which the constitution has devolved upon the court itself. An act authorizing the first judge of the county courts to appoint a district attorney, would not be a greater departure from the constitutional delegation of power. Such a disregard of a constitutional provision ought not to receive the least countenance from this court. It would afford a precedent for further unjustifiable legislative innovations upon the constitution. Nor can the appointment in question be sustained under that clause of the 13th section of the 4th article, which declares that "such clerks and other officers of courts whose appointment is not herein provided for, shall be appointed by the several courts, or by the governor, with the consent of the senate, as may be directed by law." It would be liable to the same objection that it is not an appointment by the court, but by certain members of it. In whatever light, therefore, this appointment is viewed, there can be no doubt but that it was unauthorized and void. The judgment of *ouster* pronounced by the supreme court, was therefore right.

The second question,—whether that part of the judgment of the supreme court, by which the title to the office of clerk of the common pleas and county court is determined to be in the relator, is correct,—remains to be considered. It was contended on the argument of this cause by the counsel for the plaintiff in error, that the denial of the defendant below in his plea of the title of the relator, when taken in connexion with the averment in the information, that the relator was clerk of the city and county of New-York, formed an issue which would prevent this court upon this demurrer from giving judgment in favor of the relator upon this branch of the information. But it will be seen on examination, that the plea does not deny that Conner was clerk of the city and county as was alleged, but that he was not both

such clerk *and* clerk of the common pleas and county court. This denial is based upon the fact set up in another part of the plea, that the defendant below had been appointed clerk under the act of 1843. The defendant makes no claim to be county clerk, nor does he pretend to show title to that office in any one else. Now, although it might be true that the relator had shown himself entitled to the office of clerk of the city and county, it by no means followed as the plea alleges that he was entitled to both clerkships. This is the whole scope of the plea, and the argument in the former branch of the case proceeded upon such an assumption. It having been shown that the defendant has no claim or title to the office of clerk of the common pleas, it follows as matter of fact, that the relator is such clerk, because it is substantially admitted that he is the clerk of the city and county. The act of 1843 did not abolish the right of the county clerk to act as clerk of the court of common pleas, on account of its conflict with the constitution. Such being my views of the whole case, I am in favor of affirming the judgment of the supreme court.

FOLSOM, Senator. Were it now an open question as to the mode in which the clerk of any judicial court should be appointed to office, expediency would seem to me to require that the appointment emanate from the court itself in which he is to exercise his functions. But the framers of the constitution of this state, while recognizing this principle in reference to other judicial tribunals, expressly provided otherwise as to county clerks, who were *ex officio* clerks of the courts of common pleas in their respective counties. These were made elective, and such has been the uniform practice throughout the state, until the legislature of 1843 passed an act, providing that the clerk of the court of common pleas for the city and county of New-York should be appointed by the court. The reasons assigned for this change are good on the score of expediency; but it amounts, in my opinion, to an amendment of the constitution, which the legislature is not competent to make.

But while it is admitted on the part of the plaintiff in error

that such are the provisions of the constitution, it is argued that "the legislature, being *sovereign*, possesses all powers over the subject, not taken from it by the constitution, and when the legislature acts, a court must see-its way clear before they will pronounce its acts void for transcending its powers." The sovereignty of the legislature is, however, not without its limitations; else of what avail are written constitutions, on whose provisions the legislative power may trample whenever it may think fit? Of what value are the most important franchises, involving great public interests, even when protected by the solemn guaranties of the constitution, if they may be invaded and disregarded whenever the increase of population or business, as argued in this case, may seem to render it expedient? The mischievous effects of the principle contended for by the plaintiff in error, have been already felt in reference to such interests, and it becomes essential to their security that our judicial tribunals should interpose their authority to guard against this wanton abuse of power.

The proper remedy in such cases is by constitutional amendments; and in that way only can a change be made. In my opinion the decision of the supreme court in this case should be affirmed.

PORTER, Senator. This case presents a grave question, and it should be maturely considered. The decision of the supreme court denies to the legislature the power of transferring from the clerk of the city and county of New-York, to any other officer whose appointment it may authorize, any portion of the business that appertained to that office at the adoption of the constitution in 1821.

It is not denied, I understand, but that the legislature possessed the power to create a new office, and to confer upon the incumbent appropriate duties and powers. But it is insisted that as the constitution had prescribed the mode in which the clerk of the city and county of New-York should be appointed, that is by an election by the people, and as the duties and privileges appertaining to the office of clerk of the court of common pleas,

constituted an original and essential portion of the powers, duties and privileges of the clerk of the city and county of New-York, it is not within the constitutional power of the legislature to create a new office, and authorize the court to appoint the incumbent, and transfer a portion of those duties and privileges to that incumbent.   In other words, it is argued that the constitution has conferred upon the clerk of the city and county of New-York, a vested right to perform all the duties and enjoy all the emoluments which appertained to his office at the time of its adoption, which the legislative power is incompetent to disturb.   This official claim of title to the profits of an office, in disregard of the interest and welfare of the public, and in defiance of legislative power, should have pretty clear ground to stand upon.   The incumbent of an office, who sets up by way of plea, in court, that no matter what may be the view of the legislative power of the state, respecting the convenience or wants of the community, its enactments are unconstitutional which infringe upon his profits, must be able to show a plain constitutional protection, or expect to fail in the conflict.   If the general scope and policy of the constitution are not invaded by the legislature, the case should be brought within its express prohibitions, or his plea must be ineffectual.

Although in form this is a suit between the people and Andrew Warner, whereby the latter is required to show by what right he claims to hold the office of clerk of the court of common pleas; yet in fact it is a controversy between the relator and the defendant, to determine which has the title to the fees and emoluments of that office.   Conner is the lawful clerk of the city and county, having been elected by the people to that office; and he insists that the clerkship of the court is so indissolubly connected with the office which he holds, that the legislative power is inadequate to separate them.

It will be useful to go back and examine into the origin of this office of clerk of the city and county, notice the duties belonging to it, and see how it became connected with the clerkship of the court of common pleas.   In the Montgomery charter, so called, granted to the city in 1730, (*Kent's Charter*, 73, § 29,)

there was "granted to the mayor, aldermen and commonalty of the city of New-York, to have a fit and discreet man to be, and who shall be and be called the *common clerk of the city* aforesaid, to do all those things within the city, which any common clerk of any city can do." It was also provided in the same section that this *common clerk* should also be clerk of the court of record, to be held before the mayor or his deputy, or the recorder; and also clerk of the peace, and of the sessions in and for the city and county of New-York. In a note to this section Ch. Kent, after remarking that the clerk of the city was by the act of 1807 discharged from acting as clerk of the common council, and by the laws of 1813, from the duties of registering mortgages and recording deeds, says, "the clerk of the city, being the same common clerk, in the charter, was by the constitution of 1821, to be chosen by the electors triennially." "He is reduced, so far as courts are concerned, to the single office of clerk of the court of common pleas. But he is still clerk of the city and county, and as such is charged with many incidental duties belonging to such an office."

It is rendered, therefore, very clear, that the office of *common clerk of the city* is the original and identical office, which was called "clerk of the city and county of New-York," in the constitution, and is now held by the relator; and that other duties than such as properly belonged to that officer in its creation, have been devolved upon the incumbent from time to time. We find an instance at the time of its creation, in the Montgomery charter. It is there said, "the common clerk of said city shall also be clerk of the court of record to be held before the mayor," &c. Other duties have been imposed upon this officer, and again been taken away and given to other officers by law; until at the period of the adoption of the constitution of 1821, the clerk of the city and county of New-York had no other duties appertaining to his office than such as properly belonged to it in its original organization, except those of clerk of the court of common pleas. In this respect he was like the clerks of other counties in the state. Under the former constitution and the laws, the clerks of the several counties were, *ex*

*officio,* clerks of the courts of common pleas in their respective counties. The style of the office was county clerk, and upon that office was engrafted the duties of clerk of the common pleas. In respect to the clerk of the city and county of New-York, we find the same provision re-enacted in the revised statutes, (2 *R. S.* 215, § 23,) " the clerk of the city and county of New-York, shall by virtue of his office, be clerk of the court of common pleas for the said city and county." It would seem, therefore, to be very clear, that the clerkship of the court of common pleas was not an essential or component part of the office of clerk of the city and county; but rather an incident to that office, in the discharge of the duties devolved by law upon that officer; and under a most commendable policy of not unnecessarily multiplying the number of officers.

With this fact in view, I now come to consider the question, whether the constitution has been violated by the law of 1843, which provides for the appointment of a clerk of the court of common pleas of the city and county of New-York, by the first and associate judges of that court. The supreme court has decided that the act in this respect is unconstitutional and void. That clause of the constitution upon which they rely, is section eight of the fourth article, which is as follows: " Sheriffs and clerks of counties, including the register and clerk of the city and county of New-York, shall be chosen by the electors of their respective counties." But the 9th section of the same article provides that " the clerks of courts, except those clerks whose appointment is provided for in the preceding section, shall be appointed by the courts of which they respectively are clerks." By comparing these two sections, it will be seen that the policy of the constitution was, to give to the courts the appointment of their clerks, whenever the law had not devolved the duties of clerks of courts upon county clerks. The county clerks had important and various local duties to discharge, appropriate to the original organization of the office, and connected with the administration of the government in the several counties; and it was in respect to this office and these duties that the constitution required their election. And as the same offi-

cers were required by law to perform the duties of clerks of the courts of common pleas, it became necessary in the ninth section, when providing for the appointment of clerks of courts to except those who were clerks of courts *de facto*, under the name of county clerks. Clerks of courts are not expressly required in the constitution to be elected by the people. The provision referred to reaches them only incidentally, and because county clerks are by virtue of their office, clerks of the courts of common pleas; therefore while the clerk of the county continues clerk of the court, so long the clerk of the court must continue to be elected by the people. But it can hardly be said to follow, that because the constitution has directed clerks of counties to be elected by the people, and the law requires clerks of counties to perform the duties of clerks of the courts, therefore the constitution forbids the legislature from separating the clerkship of the courts from the county clerks, and from giving the appointment of the former to the courts. There was not in the city of New-York, strictly speaking, such an officer as clerk of the court of common pleas; for the law had declared that the duties of that clerkship should be performed by the clerk of the city and county, and by virtue of his office as such clerk. This is a legislative declaration, that the clerkship of the court is incidental to the office of clerk of the city and county.

In 1828 the legislature passed an act to organize a new court in the city and county of New-York, called the superior court, and conferred upon it powers and jurisdiction very similar, if not identical, with those of the common pleas; and gave that court authority to appoint its own clerk. (*Stat.* 1828, *p.* 141.) The effect of that law was to throw a portion of the business of the court of common pleas into the new court, and of course to give to its clerk a portion of the duties and emoluments of the clerk of the city and county; yet no objection was ever made to the validity of the appointment of clerk of the superior court. This was in effect *dividing an office*, in the sense in which that term is used by the supreme court; and it was taking

away a large share of its duties and emoluments, and conferring them upon another officer created by this law.

In the case of *The People* v. *Garey*, (6 *Cowen*, 642,) it is decided, that although the legislature had no power to shorten the constitutional term of office of a justice of the peace, yet that it was competent to enlarge or contract his territorial jurisdiction. The legislature then can pass a law which affects an officer incidentally, either as to jurisdiction or in his emoluments, when done in good faith and to promote the public interest, and yet not infringe upon his constitutional rights. If the civil jurisdiction of justices of the peace had been such as to authorize a recovery to the amount of one hundred dollars at the adoption of the constitution, I apprehend that there could have been no substantial objection to the exercise of legislative power in limiting that jurisdiction to fifty dollars. The office, properly and technically speaking, is not affected in its appropriate functions or its tenure, but only in its power and emoluments; and these are, and I think always should be, under legislative control. And this is an apposite and illustrative comparison; for the civil jurisdiction of a justice of the peace formed no part of the original office, but was engrafted upon it. Just so, the taking away of a part of the duties and emoluments from the office of the county clerk, which had been engrafted upon that office, did not affect the office itself. That remained intact. Its original duties pertained to local and county matters, which were connected with the administration of the government, aside from the judicial department; and it remains charged with those duties still. Any attempt to transfer those duties to another officer not elected by the people, might well be resisted as unconstitutional. If the clerkship of the court had been considered but an incident to the office of clerk of the county, the supreme court seem to concede that it could have been separated in the manner it has been without objection. For the reasons above expressed, I have come to the conclusion that it was only an incident; and that in this respect the court below erred.

But again it is contended that the law is unconstitutional and void, because it affects the city charter, and was not passed by a

two-third vote. By that charter the mayor, recorder and alder-men have a right to sit in that court as judges thereof; and the act excludes them from any share in the appointment. But the answer made to this objection appears to me to be very plain and conclusive. What part of the charter confers upon those officers any such right? We have no evidence that any such right was ever enjoyed or claimed under the charter. No such power was ever before exercised by the court. It was conferred by the law. As they never possessed the right to participate in this appointment, it cannot be said that any such right has been taken from them. Consequently it cannot be urged that the city charter has been in this respect affected by the law.

I am of the opinion that the judgment of the supreme court should be reversed.

On the question being put, "Shall this judgment be reversed?" the members of the court voted as follows:

*For reversal: Senators* CLARK and PORTER—2.

*For affirmance:* The PRESIDENT, The CHANCELLOR, and *Senators* BACKUS, BEEKMAN, BOCKEE, BURNHAM, CHAMBER-LAIN, DENNISTON, DEYO, EMMONS, FOLSOM, HAND, HARD, JOHNSON, LESTER, LOTT, SCOVILL, SEDGWICK, SMITH, VARNEY—20.

Judgment affirmed.

