THE PEOPLE OF THE STATE OF NEW YORK v. CHARLES W. PINCKNEY, JAMES W. BOOTH, PHILIP W. ENGS and MARTIN M. BROWN. (See *ante*, p. 377.)

BROWN, J., dissenting. The defendants' appeal in this action presents no questions which have not already been determined by the judgment of this court. The authority and constitutionality of the act of the 15th of April, 1857, to establish a metropolitan police district and provide for the government thereof, was affirmed upon the sole ground that the district thereby created was composed of more than one city or county, to wit, the counties of New York, Kings, Westchester and Richmond; which was a civil division unknown at the time of the formation of the Constitution. Upon no other theory could the act have received the sanction of the court. The officers created thereby were neither city, town or village officers within the 2d section of the 10th article, and there was therefore no restraint or limitation of the legislative power in regard to their election or appointment. The leading opinion in *The People* v. *Draper* (15 N. Y., 532), in which the validity and force of the act was considered, and which expressed the judgment of the court, has this positive and emphatic declaration: "If the provisions of the statute had been limited territorially to the city of New York, it would be in conflict with the section of the Constitution so often referred to." The article under consideration to create a metropolitan fire district and establish a fire department therein, passed March 30th, 1865, sets out with a purpose expressed in the first section, of uniting the cities of New York and Brooklyn in a metropolitan fire district, but there are no provisions giving effect to that purpose except that which declares that either city upon request may receive aid and assistance from the other whenever more than the usual force shall be required to extinguish fires. The act in substance and for all practical purposes, relates exclusively to the city of New York. Each city bears the burden of its

own fire department. Brooklyn still selects and controls its own firemen and officers charged with their management and supervision as in times past; and the metropolitan fire commissioners are to exercise their functions for the benefit of, and within the city of New York, and not elsewhere. All the material provisions of the act, and which are designed to effect any useful purpose, are limited territorially to the latter city, and bring it clearly within the rule laid down in the case of *The People* v. *Draper*, to which I have referred. Its constitutionality cannot be sustained upon the ground that it creates and calls into being a district or civil division territorially greater and more extensive than those mentioned in the 2d section of article 10, in which the electors and local authorities are vested thereby with the exclusive right to the election or appointment of the local officers.

This view, it seems to me, should be decisive of the questions involved in the appeal, for it is to be remembered that the metropolitan police act created a new class of officers, with duties and powers somewhat modified and changed from those theretofore exercised by the officers and authorities having charge of the police force. If names and forms were to be regarded as the distinguishing features, and not the essence and substance of things, then the officers were new; otherwise not. But in this particular, we are not left without authority. For DENIO, Ch. J., in the case referred to, said: "It is not enough to take the case out of the provisions of the section that the names of the officers existing when the Constitution was adopted are afterward changed by an act of the legislature, or that their functions are colorably modified. The Constitution regards substance and not form." To the same effect is the remark of BRONSON, J., in *Warner* v. *The People* (2 Denio, 272): "If the office may be divided, and the duties assigned to two officers, both must be chosen by the electors of the county. No other rule will give full effect to the Constitution." These observations had reference to that part of the 2d section which declares that "all officers whose offices may hereafter be created by law, shall be elected by the people or appointed as the legis-

lature may direct;" and which is now invoked to sanction the authority of the act to create the metropolitan fire district. To enable the legislature to take from the local communities — the cities, towns and villages — the power of election or appointment under this clause, the office, not the officer, must have been created since the adoption of the Constitution. An office is a duty, a charge, a trust exercised for a public purpose. The duty or office of protecting the city against injury or destruction by fire is certainly not a new duty or office created and imposed upon the city authorities since 1846. It has been exercised directly or indirectly by the mayor and common council in some form from time immemorial. The manner of its exercise, whether through a voluntary association or associations, or by a charitable corporation, as the fire department was denominated upon the argument, is of no moment whatever to the present inquiry. Is the office of preventing and extinguishing fires within the city limits a new office, and one which the legislature have recently created? From time out of mind, the mayor and common council have organized and commissioned the fire companies and disbanded them at their pleasure. They have provided and furnished the engines and equipments, appointed the firemen, and confirmed the officers selected by the men, and charged the expenses of the entire department upon the city. How can it be said in the face of these facts that an office so long recognized and so essential to the safety of property, heretofore as now, is a new office originating out of new exigencies. The material distinction between the present and the proposed system is this: at present, the fire department is under the control and management of the mayor and common council, and the services rendered by the force employed is voluntary and without compensation. That proposed by the act places the department under the government and control of the commissioners created by the act, who are to be appointed by the governor and senate, and the force to be employed are to be paid and compensated for the services rendered. That is all.

From this distinction proceeds the theory that the act im-

pairs no rights of the people of the city, because the services of the present firemen are voluntary, and those who render them are not officers created and formally recognized by law. Grant all this. Grant that the individual firemen have no political status, and hold no office. They cannot be less than the employees of a department of the city government, and in respect to their employment have the same relation to the city as those engaged in the reparation and care of streets, parks and public places. If they are not political officers themselves, they are employed, directed and controlled by those whose offices are political, and who are recognized as such by law. The argument, to be of any force, must go further, and show that the firemen are the sole agencies employed in the prevention and extinguishment of fires, and that there is room for a new class of officers, to whom are to be assigned new powers and new duties, heretofore no part of the administrative functions of the municipal authorities. The firemen are but the subordinate agencies in the work to be accomplished. The mayor and common council is the primary and principal agent and instrument, imparting to and endowing the former with their being, directing and controlling their labors and movements. Besides, the act does not propose to give to the firemen a political status. They are to remain as they heretofore have been, mere employees or servants of the department, doing in future, for a fixed compensation, what has heretofore been done voluntarily. If the local authorities of the cities and villages can be deprived of this part of their administrative functions, and have them delivered over to a commission appointed by the central power of the State, what part of their functions are safe from like invasion and usurpation. The commissioners will exercise no power or authority under the act which the city government has not habitually exercised long before the Constitution of 1846 took effect. The power of the legislature to deprive it of the office in question is not disputed, but it is the power which this act gives to intrust the execution of the duty of providing for the prevention and extinguishment of fires to officers not elected by the people or appointed

by the local authorities, which I think conflicts with the fundamental law. One leading purpose of those who framed that instrument was the decentralization of the powers of the government, and their distribution amongst the local communities. The provisions of the 2d section of the 10th article, is one of the manifestations of this purpose. Whatever may be thought of its wisdom or its efficacy as a rule of public policy or utility in the present condition of the country, it is not the province of the courts to consider and determine. Their duty is limited to an adjudication upon the nature of the right in controversy. Is it one of those over which the legislature has absolute control, or one which the people have reserved to themselves under the section to which I have referred?

I will not pursue the argument further; my reasons against the construction contended for by the defendants were given in the dissenting opinion delivered in the case of the *People* v. *Draper*, and need not be repeated. We must accept the judgment therein rendered, as the true and authoritative exposition of the constitutional provision, and so we must also accept, as logical and sound and suitable to be applied to the solution of similar questions, the reasoning of the opinion upon which the judgment is founded. No ingenuity (not even the intellectual ability of my learned and accomplished associate, can reconcile the argument delivered by Judge Denio, and which expresses the opinion of the court, with the validity of the act we are considering; and if allowed to have the effect now which it had then, is completely subversive of its constitutionality and force.

The judgment of the General Term of the Supreme Court should be be affirmed.

See *ante*, p. 377.