Okey, J.
We have considered and determined as to the merits of the several grounds relied on for the reversal of the judgment, but we deem it unnecessary to report more than three of the questions presented.
1. The prisoner demanded a struck jury, and in pursuance of the demand the names of forty persons were selected at the auditor’s office by the county recorder, a deputy clerk of the court of common pleas, and a deputy county auditor. The auditor was absent from the county, and the clerk of the court of common pleas, though not absent from the county, was not present at the selection.. Neither of the deputies had been selected by a judge to-perform that service. Subsequently the prosecuting attorney and the'attorneys for the prisoner appeared at the clerk’s-office, and struck from the list which had been prepared twenty-four names, in accordance with the statute, and a venire was issued for the remaiuirig persons. It does not appear whether it was then known to the prisoner or his counsel that the deputy auditor and deputy clerk, and not their principals, had assisted in selecting the names.
When the jurors were called for the trial of the case, and, before they -were impaneled or sworn, the prisoner by his counsel challenged the array, on the ground that the-county auditor and clerk of the court had not assisted in selecting the names of the persons for jurors, nor had any person assisted for either who had been appointed by a judge for the purpose. The court overruled the challenge, and the prisoner excepted.
The act of 1878, then in force, provided as follows:
“A challenge to the array may be made, and the whole array set aside by the court, when the jury, grand or petit, was not- selected, drawn or summoned, or where the officer who executed the venire did not proceed, as prescribed by law.” 75 Ohio L. 639, § 14; Rev. Stat., § 5175.
“Any party to an action may demand a struck jury for *424 .the trial of an. issue of fact therein, by filing a precipe with the clerk; and thereupon the clerk shall proceed to the office of the county auditor, and there take to his assistance the county auditor and recorder in the selection of the list of names for such jury; which three officers shall select from the qualified electors of the county, the names of forty persons impai’tial between the parties, and who, from their intelligence and sound judgment, are believed to be well qualified to try the cause; the auditor shall make and preserve in his office a list of the names of the persons so selected; and the clerk shall, without delay, give four days’ notice to both parties, or their attorneys of record, of the time of striking the jury, and furnish to each at the same time a true copy of such list.” 75 Ohio L. 641, § 24; Eev. Stat., § 5185.
“ If the clerk, auditor, or recorder, is interested in the cause, sick, absent from the county, related to either of the parties, or does not stand indifferent between them, a judge entitled to hold such court may, in term time or vacation, appoint some judicious, disinterested person to take the place of the officer so disqualified, in selecting and striking the jury, and to do and perform all things required to be done by such officer when acting in that behalf.” 75 Ohio L. 642, § 27 ; Eev. Stat., § 5188.
Section 25 (75 Ohio L. 642; Eev. Stat., § 5186) provides how the parties shall proceed in striking names from the list. This provision was complied with, and the venire was properly issued and served.
These provisions, it will be seen, are found in that part of the revision relating to practice in civil cases, but they also apply to criminal cases, except that those relating to a struck jury do not apply to a capital case.
By acts then in force it was further provided as follows :
“ The auditor of any county may appoint a deputy, to be approved by the commissioners of such county.” 66 Ohio L. 35, 36.
“Every such deputy shall, previous to entering on the duties of his appointment, take an oath or affirmation faith *425 •fully to perform all the duties of his appointment; and, when so qualified, the deputy may do and perform any and all of the duties appertaining to the office of his principal.” 1 S. & C. 500.
“ Clerks (of the courts of common pleas) may each appoint one or more deputies, to be approved by their respective courts if in session, if not then in session by any judge thereof.” S. & S. 70.
“ Every such deputy shall, previous to entering on the duties of his appointment, take an oath or affirmation faithfully to perform all the duties thereof; and, when so qualified, the deputy may do and perform any and all of the duties appertaining to the office of his principal.” 1 S. & C. 233.
“A duty enjoined by statute upon a ministerial officer, and an act permitted to be done by him, may be performed by his lawful deputy.” 75 Ohio L. 598, § 595 ; Rev. Stat., § 4949. And see Rev. Stat., §§ 2,10.
On behalf of the state, it is contended that the object in •enacting that the judge shall appoint some person to act in the place of the clerk, auditor, or recorder, in selecting the names of persons for jurors, if such officer be absent or disqualified, was to provide for those counties in which one or more of those officers may have no deputy. But we think the object of the legislature was more comprehensive-than that. No provision is made for the disability of a deputy. Suppose the clerk is absent from the county, but disinterested, while the deputy is present, but interested in the cause. Perhaps we might assume that, in such case, the deputy is virtually clerk of the court, and hence the disabilities specified in the statute would extend to him. If we should admit this to be true, the more substantial objection remains, that the proper selection of forty names for such purpose involves judgment and discretion and requires a general acquaintance throughout the county. Reputie's, in many instances, are as well qualified in these particulars as their principals; but this is not the general rule. Indeed, according to the principle decided in Warwick v. The State, *426 25 Ohio St. 21, a minor may be a deputy clerk of any court; and we know that nothing is more common than for a minor to act in that capacity. The same thing is true as to the deputies in the offices of the auditor and recorder. They are chosen for other qualities than ability to make selection of suitable persons, in the various parts of the county, to act as jurors.
We are satisfied that the statute, in providing that the selection of such names shall be made by the clerk, auditor, and recorder, except in case of their absence or disability, designates the persons who are required to perform an act, and does not have reference to the performance of an act by officers, merely as such; and that, in case of the absence or disability of either the clerk, auditor, or recorder, a judge must select a person to act in his place. Consequently, the language of the acts empowering deputies to perform the duties pertaining to the offices of their principals, broad as it is, does not extend to the performance of the duty under consideration here; and it is perfectly clear that the performance of such a duty could not be delegated by one of those persons to another person, in the absence of statutory provision permitting that to be done. 45 N. Y. 785. True, the defendant and his counsel may have known of the defect in question at the time they assisted in striking names from the list; and it is suggested that the objection, if known, should have been made then, or that if the fact was not then known, this should appear in the record. No doubt many mere irregularities in criminal, as well as in civil eases, are waived, if objection is not made as soon as practicable after the irregularity is discovered; but, aside from the question whether the clerk had power to grant relief, even if disposed to do so, we do not think the doctrine of waiver applies to a defect of this character in that posture of the case. On the contrary, the objection could more properly be made in court by challenge to the array. The statute recognizes such right at any time before the jury is impaneled and sworn.” 75 Ohio L. 639, *427 §14; Rev. Stats., § 5175. And, finally, the challenge in this case should have been sustained.
2. The panel of the struck jury was exhausted before the requisite number was obtained. The statute provides that “if a jury be not made from said sixteen jurors, the sheriff shall, under the direction of the court, fill up the panel from the bystanders,” etc. 75 Ohio L. 642, § 26; Rev. Stats., § 5187. And the statute further'provides that a deputy sheriff “ may do and perform any and all of the duties appertaining to the office of his principal.” 66 Ohio L. 35; 1 S. & 0. 500; 75 Ohio L. 598, § 595; Rev. Stats., §§ 10, 4949. The court ordered "William J. James, a deputy sheriff of the county, to call persons from the bystanders to fill the panel. To this the prisoner objected. The deputy called M. S. Bonnell. The prisoner challenged him for cause, upon the ground that bystanders should be selected and called by Joseph Moses, bailiff of the criminal department of the court, who, .it appeared, was then present in court, able and willing to perform the service,* and it was insisted on behalf of the prisoner that the bailiff alone was authorized to perform that duty. The court refused to sustain the challenge, and the prisoner excepted.
Moses had been appointed and qualified as criminal bailiff, under an act passed in 1879. 76 Ohio L. 54. The act, in its first section, authorizes a judge of the court of common pleas to “ appoint a criminal bailiff for such county, who shall hold his office for the term of two years, and until his successor is appointed and qualified.” And section two provides, among other things, as follows : “ It shall be the duty of such criminal bailiff to act for the sheriff’ in all criminal cases, and matters of a criminal nature, in the common pleas and probate courts of said county. He shall be present during all trials of criminal cases in said courts, under direction of the sheriff, and shall perform all the duties during such trials as are now or may be performed by the sheriff of such counties.”
Under the former constitution, the election of a sheriff was provided for and his term of office fixed. The *428 present constitution does not contain that provision, but it recognizes the existence of the office of sheriff, and, like the former constitution, provides that he shall not be eligible to the office for more than four years in any period of six years. Probably legislative control over the office, while it has an existence, is substantially the same under the present as under the former constitution. The power to take from the office of sheriff a material part of longrecoguized and accustomed duties, create a new office, and confer such duties on its incumbent, so that the latter will have complete power with respect to such duties to the exclusion of the sheriff, may well be doubted. The State ex rel. v. Brunst, 26 Wis. 412; King v. Hunter, 65 N. C. 603; Warner v. The People, 2 Denio, 272; The People ex rel. v. Albertson, 55 N. Y. 50. But we do not understand that this is the effect of the act of 1879. That the practice may be changed, and the powers and duties of the sheriff in some respects increased or diminished, can not be doubted. Indeed, this court has held that this may be done without affecting the liability of his sureties. King v. Nichols, 16 Ohio St. 80. And from 1824 until 1854, the court of common pleas could require the attendance of constables in court and before the grand jury. 2 Chase, 1356; 3 Chase, 1772 ; 4 Curwen, 2590. But this did not detract from the power of the sheriff'. The officers so attending, by direction of the court, were the sheriff’s assistants, and performed services which are now performed by his deputies. The act of 1879 must rest on a similar principle. The criminal bailiff is in effect a deputy sheriff, required to perform important and special services, but he must perform them “ under the direction of the sheriff,” who is not prohibited from performing the same duties at any time when it becomes necessary for him to do so. Nor does the act so affect the power of other deputies of the sheriff that the court may not, as occasion may require, direct them to perform any act which the sheriff himself might perform. Any other construction would lead to serious inconvenience, as the bailiff, in discharging the various duties of his ap *429 pointment, is often necessarily absent from tbe court. In this case, the bystander may not have been in the immediate presence of the court, and if the bailiff had gone from the court-room, prisoners might have been left without any officer in charge. But how that may have been is immaterial. We are satisfied the court did not transceud its authority in directing deputy sheriff James to perform the duty in question.
3. Dr. John Davis gave material testimony tending to convict the prisoner. After the jurors had retired to consider of their verdict, they returned into court and requested the judge presiding at the trial to state to them his recollection of Davis’ testimony. To this the prisoner objected-, but the court complied with the request of the jury, and the prisoner excepted. The chapter regulating the trial of civil cases contains a provision authorizing the court, on request of the jury, to “ give its recollection as to the testimony on the point in dispute.” 75 Ohio L. 643, 644, §§ 29, 34; Rev. State., §§ 5190,. 5194. The chapter relating to the trial of criminal cases, contains no corresponding provision. 74 Ohio L. 349, § 33; Rev. Stats., § 7300. But an examination of those chapters does not lead to the conclusion that, in omitting the provision in the latter case, there was any intention to deny to the judge such power.
In stating his recollection of testimony at the request of the jury, of course a judge should observe great caution, as several serious mistakes have been made in that way; but we do not doubt the authority of a judge to comply with such request, nor'can we say that the power was improperly exercised in this case. Of course, it is necessary that the prisoner should be present, unless he absconds during the trial.
We do not find any error in the record, except in overruling the challenge to the array; and for the error in that regard the judgment will be reversed and a new trial awarded.

Judgment reversed.

*430 White, J.,
did not concur in the reversal, being of opinion that the irregularity in making up the list from which the jury was struck by the parties without objection, is not sufficient to warrant a new trial.