ANDRÉ BIENVENU ROMAN, Governor of the State of Louisiana, for the use of James Corlis v. SAMUEL JARVIS PETERS and others, Sureties of Charles F. Hozey, late Sheriff.

WILLIAM M. PECKSLAY v. CHARLES F. HOZEY, late Sheriff, and his Sureties.

JOHN MORGAN HALL and others v. THE SAME.

Where, subsequently to the execution of the official bond of a sheriff, a new office is created, by which his duties and emoluments are altered or diminished, his sureties will be discharged from any liability, either to the state or to third persons, for his future conduct. The contract cannot be changed without their consent ; and no act was required to be done, on their part, to exempt them from future responsibility.

THE first of these cases was brought up from the District Court of the First District, *Buchanan*, J., and the two last from the Commercial Court of New Orleans, *Watts*, J. Judgments hav-

ing been rendered against the defendants in each case, they have appealed.

*Eggleston, Potts,* and *T. Slidell,* for the plaintiffs.

*Micou,* for the appellants.

BULLARD, J. These three appeals are from judgments rendered against the sureties of Hozey, the late sheriff of the parish of Orleans, on his official bond. In all the cases the money received by him came into his hands in the summer and autumn of 1840, after the promulgation of the act of the legislature creating the office of Sheriff of the Criminal Court, which was carved out of that held by Hozey, during the time for which the appellants were his sureties.* The question, therefore, presents itself, which was ably argued at the bar, whether the change produced by that act, by curtailing the duties and emoluments of the office, operated the release of the sureties ?

The appellants signed the bond in March, 1839, and the office was limited to two years. At that time the sheriff of the parish of Orleans was, *ex officio,* keeper of the public prison, and it was his duty to serve all process in criminal as well as civil cases, and he was entitled to all the emoluments and perquisites of that office. By an act of the 18th of March, 1840, the office of Sheriff of the Criminal Court of New Orleans was created. The second section of that act provides, " that, thereafter, the present sheriff of the parish of Orleans shall cease to be an officer of said Criminal Court, and all writs, orders, warrants and other process of said court shall be directed to the sheriff of the Criminal Court of New Orleans, and shall be by him served and executed ; and said sheriff of the Criminal Court shall thenceforward possess all the powers, and perform all the duties, which are now vested in or are performed by the sheriff of the parish of Orleans, as the ministerial or executive officer of said Criminal Court, and shall be entitled to demand and receive the same compensation and emoluments therefor, as are now received by the said sheriff of the parish of Orleans." The new sheriff was required to give bond in the sum of thirty thousand dollars.

* This act was approved 18th March, 1840. See Sess Acts, p. 40.

It is contended, on the part of the sureties, that this act produced so material a change in the office of sheriff, so completely dismembered it, that they were no longer bound; that their inducement to become sureties of the sheriff, was the emolument which the office afforded when they signed the bond; that they bound themselves for the sheriff of the parish, such as the office was at that time, and not as it would be after being shorn of important powers, duties and perquisites.

" The law is particularly watchful over the rights of sureties ; and will not countenance any transactions between the parties, that shall lessen the ability of the principal to comply with his contract, or that shall alter the rights of the parties, or enlarge the demand to the prejudice of the sureties. To permit parties to modify and alter their contracts as they please, and to hold the sureties answerable for the performance of such parts as were not altered, would be transferring their responsibility, without their consent, from one contract to another. The contract, by the modification and alteration, becomes a new and a different contract, and one for which the sureties never became responsible." Such was the language of Judge Thompson in the Circuit Court, in the case of *The United States* v. *Tillotson*, who was surety on a contract for the erecting of certain military works at Mobile Point. A slight modification had been made between the Government and the principal contractor, by which the latter was permitted to use tapia instead of brick masonry on a part of the works, at one dollar less per cubic yard than had been agreed on for brick masonry. The surety was held to be discharged.

In this case the alteration was apparently advantageous to the surety, but the court held that it could not be taken into consideration whether it was advantageous or prejudicial ; that this was a matter upon which the sureties had a right to judge for themselves ; and that it was not in the power of the plaintiffs to transfer the suretyship from one contract to another. Paine's Reports, 305. Our attention has been called to a remarkable case from the English books, which illustrates the principle that the parties cannot modify their agreements without the consent of the surety, without discharging the latter. James, the defendant, became surety for the hire of thirty milch cows for one year. The par-

ties afterwards, without consulting the surety, modified the agreement in such a way as that thirty-two cows were given for one-half the year, and twenty-eight for the other half. It was held that the surety was discharged. Mr. Justice Bayley said, "this was an entire contract for the purchase of thirty cows, and if, at the commencement of the term, the plaintiff could not insist that this was a divisible contract, it must follow that it continued an entire contract during the term. It is sufficient to say that there was a new arrangement without the knowledge of James." Theobald on Surety and Agency, 76. In the 9th volume of Wheaton's Reports, page 680, we find the case of *Miller* v. *Stewart*, in which the Supreme Court of the United States held, that the contract of a surety is to be construed strictly, and is not to be extended beyond the fair scope of its terms. Where a bond was given conditioned for the faithful performance of the duties of the office of deputy-collector of direct taxes for eight certain townships, and the instrument of appointment referred to in the bond was afterwards altered so as to extend to another township, without the consent of the sureties, it was held that the surety was discharged from his responsibility for moneys subsequently collected by his principal. Judge Story, in delivering the opinion of the court, remarks : " To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no farther. It is not sufficient that he may sustain no injury by the change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract." The judge continues : "it is no answer to say that it is not intended to make him liable for any money, except what was collected in the eight townships. He has a right to stand upon the terms of his bond, which confine his liability to money received under an appointment for eight townships."

In the case now before the court, the defendants became the sureties of Hozey, for the faithful performance of his duties as sheriff of the parish of Orleans. In that capacity it was his duty to serve all process out of all superior courts, both civil and criminal. He was, *ex officio*, jailor, and was entitled to large emoluments for the keeping and maintenance of prisoners, and the transportation of convicts to the penitentiary. He was entitled to cer-

tain extra allowances for his services in criminal cases.   It must be considered that what might be the probable emolument of the office, such as it then existed, and how far they might safely guaranty his good conduct in the discharge of his duties, entered into the contemplation of the sureties.   The act of the 18th of March, 1840, creating the office of sheriff of the Criminal Court, and depriving Hozey of all its emoluments as well as patronage, left the office of sheriff of the parish of Orleans materially different from what it was when the bond was given.   The importance of the new office of sheriff of the Criminal Court, may be estimated by the fact that he is required to give bond with security in the sum of thirty thousand dollars, one half the amount of the bond given by the sheriff of the parish.   This act produced a change in the condition of things which could not have been anticipated.   The defendants consented to become the sureties of Hozey in his original office, with all its powers, patronage, and emoluments ; but *non constat* that they would have consented to become so merely in his capacity of sheriff of the courts of civil jurisdiction.   The name remained but the substance was gone ; and the suretyship of the defendants cannot be moulded, without their consent, so as to apply to this altered condition of things.

These principles are not denied by the opposite party, but their application to official bonds given to the State by public officers is contested ; and it is asserted that any change produced in the contract by the agency of a third person, causing an increased responsibility of the surety, will not discharge the latter, if the creditor has merely been inactive or passive.   But we cannot regard the State as a stranger to this contract.   On the contrary, if the State could not recover on the bond in consequence of the change of the office, neither can the party who alleges himself to be aggrieved by the malfeasance of the sheriff.   The law, it is true, gives to individuals a right to sue upon the bond ; but the State must be considered as the principal party to the contract.

It is further said, that the sureties had it in their power to cause themselves to be released, and new sureties to be given.   To this it may be answered, that no act on their part was required to be done in order to save them from farther responsibility, if such a change had been produced as sufficed to release them as sureties

on the bond. They are authorized to look to the circumstances and the condition of things, as they existed at the time they signed the bond ; and if the condition of things had been changed, and the office no longer existed such as it was, they had a right to consider themselves as no longer bound.

It is, therefore, ordered that the judgments appealed from be avoided and reversed respectively, and that ours be for the defendants, with costs in both courts.