# Richmond.

## LOVING ET ALS. V. AUDITOR OF PUBLIC ACCOUNTS.

### December 19, 1882.

1. PUBLIC OFFICERS— *Compensation.*—For reasons of public policy, the power of the legislature to change the compensation of public officers is absolute, except so far as it may be limited by the fundamental law. Such limitation is found in the constitution of this State, as respects the salaries of certain enumerated officers.

2. IDEM—*Idem—Sureties.*—This applies also to sureties on official bonds of public officers. There being no contract between the State and its officer that during his term his compensation shall not be changed, and the power to change it being absolute, the sureties must be held to have signed the bonds of their principal with reference to the existence of this power, and their liability thereon is not affected by such change.

3. CONSTRUCTION OF STATUTE—*Countersigning drafts.*—If, by the provisions of Code 1873, ch. 206, § 58, the legislature intended all drafts drawn by the general agent of the penitentiary to be certified by the superintendent and countersigned by the governor; the failure to certify and to countersign these drafts does not affect the liability of his sureties for money so drawn and received by him. These provisions are merely directory to such officers, and form no part of the contract with the sureties.

4. GENERAL AGENT—*Material purchased.*—Where the general agent of the penitentiary bought raw material for the State, and gave therefor his notes signed by himself with the letters "G A" (meaning general agent) appended, but the State assumed the liability and paid the notes, the general agent and his sureties are entitled to no credit therefor, as for material purchased on his individual responsibility.

5. IDEM—*Sureties—Credits for compensation.*—The legislature having reduced the general agent's compensation, he and his sureties are entitled to credit for the reduced compensation, and not for the compensation at the rates allowed by the law in force at the dates of the official bonds. But as by act, which become law 1st July, 1878, the legislature restored the compensation as allowed by Code 1873, ch. 13, § 23, credit must be allowed after that day at the original rates.

6. IDEM—*Idem*—*Liability.*—Code 1873, ch. 206, § 57, provides that the general agent and his sureties shall be responsible for the amount of all debts for goods or work contracted with him or under his authority, and for all money received by him as such agent, except as therein provided. There is no law making it a part of his duty to collect debts contracted with his predecessors, and moneys so collected are not covered by his bond, and are not chargeable to his sureties.

7. IDEM—*Idem*—*Outside receipts.*—Where money went into the agent's hands outside of his lawful duties, the sureties are not chargeable with the same—*e. g.*, contributions to build a chapel for convicts.

8. IDEM.—*Idem*—*Receipts in excess of appropriations.*—The constitution (art. X, § 10) declares that no money shall be paid out of the treasury except in pursuance of appropriations by law. Where the general agent received $12,500 pursuant to appropriations made before or after receipts, and $5,000 in excess of appropriations, the sureties are liable for the first, but not for the last sum.

Appeal from decree of circuit court of the city of Richmond, rendered 3d July, 1882, in the chancery cause therein pending, in which Henry Loving, Sr., Alfred G. Pettitt, E. H. Pettitt and William K. Watts are plaintiffs, and John E. Massey, as auditor of public accounts of the State of Virginia, and N. C. Taliaferro, late general agent and storekeeper of the penitentiary of Virginia, are defendants.

Taliaferro was elected to that position for two years, beginning 1st January, 1876, and re-elected for a similar term, ending 31st December, 1879. He gave the official bond required by law for each term, and the plaintiffs executed those bonds as his sureties. At the close of his second term, a settlement of his transactions before the board of directors of the penitentiary revealed that he was in arrears to the Commonwealth in a large sum of money— to wit: $31,206.82—for which, he being insolvent, his sureties would have to account. Accordingly they investigated the matters, and conceiving they had discovered many mistakes in the settlement greatly to their injury, and being advised that they, as sureties, had been released from all liability upon each of said bonds by the action of the Com-

monwealth through her general assembly, the plaintiffs filed their bill in the said circuit court against the defendants.

In their bill they averred that the act passed 12th February, 1876 (Acts 1875–6, ch. 62, p. 52), reducing the compensation of the general agent and storekeeper of the penitentiary, after the plaintiffs had signed his official bond, was a material alteration of the contract of the plaintiffs as his sureties; and that the reduction having been made without their consent, they had been released from all liability on the first bond. And they further averred that a similar act (Acts 1877–8, ch. 104, p. 92) had released them from all liability as sureties on the second bond. They likewise, as an alternative, alleged that if they were not released as aforesaid, they were at least entitled to have Taliaferro's accounts credited by the full amount of the compensation provided at the dates of those bonds respectively. The bill tendered specific items of surcharge and falsification of the various monthly and annual settlements of their principal during his two terms of office, based chiefly upon the theory that those items were for money which did not properly come to his hands as such general agent; and hence they, as his official sureties, were not liable therefor. The auditor answered, denying that the sureties had been released as alleged; and averring that Taliaferro's defalcations as such agent and storekeeper were between $30,000 and $40,000, and that the plaintiffs, as his sureties, were bound therefor to the State; and an account having been ordered and taken, to the master's report the plaintiffs filed two and the attorney-general six exceptions, all of which are stated and discussed in the opinion of Judge Lewis.

The circuit court decreed that the plaintiffs and the defendant, Taliaferro, pay unto the Commonwealth of Virginia, the sum of $31,206.82, subject to credit for $2,060.82,

with interest on the remainder from 1st January, 1880, and costs. From this decree the plaintiffs obtained an appeal to this court.

*T. P. Fitzpatrick, Horsley & Brown,* for the appellants.

*F. S. Blair, Attorney-General,* for the Commonwealth.

LEWIS, J., delivered the opinion of the court.

The first question to be determined in this case is the effect upon the rights of a public officer and his sureties of a statute reducing the compensation of such officer, passed after his appointment and the execution of his official bond.

The appellants were sureties on the official bonds of N. C. Taliaferro, late general agent and storekeeper of the penitentiary. He was chosen by the legislature to that position for a term of two years, commencing on the 1st day of January, 1876, and was re-elected for a second term, commencing on the 1st day of January, 1878.

After the commencement of each of his terms of office, and the execution of his official bonds, the legislature, without the assent of his sureties, reduced the compensation of the general agent of the penitentiary; and the appellants insist that they were thereby released from all liability as such sureties.

After the expiration of his last term of office, a settlement of his accounts was made between Taliaferro and the board of directors of the penitentiary, from which a balance of about $32,000 was ascertained to be due by him to the State. The appellants thereupon filed their bill in the court below, to which they made the auditor of public accounts and the said Taliaferro parties defendants, and in which they prayed that the auditor be enjoined from in-

stituting any proceedings at law against them on said bonds; and in the event the court should be of opinion that they were not released from liability as sureties thereon, as they insisted they were, then that an account be taken to ascertain the correct balance due by their principal to the Commonwealth. Under an order of the court an account was taken and returned by one of its master commissioners, to which the plaintiffs filed two, and the attorney-general filed six, exceptions. At the hearing the court, passing on the exceptions and ascertaining the balance due by Taliaferro to be $29,146, entered its decree in favor of the Commonwealth against him and the plaintiffs, as his sureties, for that amount.

In this decree ten errors are assigned by the sureties in their petition for an appeal to this court.

1. The first error assigned is, that the circuit court erred in not decreeing that by the reduction of their principal's compensation they had been absolutely released from liability as his sureties. This objection rests upon the theory that upon the appointment of a public officer and the execution of his official bond, a contract arises that his compensation shall not be changed, certainly not diminished, during his term of office. The question thus raised has often arisen, and the decisions of the courts to the contrary of appellants' view are numerous and uniform. For obvious reasons of public policy it is well settled that the power of the legislature in respect to changing the compensation of public officers is absolute, except so far only as its power may be limited by the fundamental law of the State. Such a limitation is found in the constitution of this State, and in the constitutions of most, if not all, of the States of the Union, in respect to the salaries of judges and other enumerated officers. And the very limitation upon its power in respect to those officers shows that in respect to all others its power is absolute.

Upon this subject, the supreme court of Pennsylvania, in the case of the *Commonwealth* v. *Bacon*, 6 S. & R. 322, said : The services rendered by public officers do not in this particular partake of the nature of contracts, nor have they the remotest affinity thereto. As to a stipulated allowance, that allowance, whether annual, *per diem*, or particular fees for particular services, depends on the will of the law-makers. See also *Barker* v. *The City of Pittsburgh*, 4 Penn. St. 51.

To the same effect is the case of *Butler and others* v. *The Commonwealth of Pennsylvania*, 10 How. 402. In that case the plaintiffs in error had been appointed canal commissioners by the governor of Pennsylvania by authority of a statute of that State, under the provisions of which they were appointed for one year, and at a fixed compensation of $4 *per diem* each. During their term of office, an act was passed by the legislature reducing their compensation, and providing for the election by the people of canal commissioners. The validity of this statute was assailed by the plaintiffs in error as impairing the obligation of a contract, and therefore void. And the supreme court of Pennsylvania having affirmed its validity, the case was carried, under the 25th section of the judiciary act, to the supreme court of the United States. There the judgment of the Pennsylvania supreme court was affirmed; and on the distinct ground that there was no contract on the part of the State of Pennsylvania with the plaintiffs in error that their compensation as canal commissioners should remain as it was at the time of their appointment. See also Cooley's Const. Lim. 277, and cases cited.

But it is insisted by the appellants that, conceding this to be the law with respect to Taliaferro, it does not apply to his sureties. We can see no ground for this distinction, and have been referred to no authority that supports it. It is true that a surety can be held liable as he has con-

tracted, and not otherwise; and consequently that any change in the contract without his asent, whether to his injury or even for his benefit, discharges him. *Miller* v. *Stewart and others*, 9 Wheat. 702.

But the question arises, What contract has been varied or departed from in this case? As we have seen, there was no contract between the State and Taliaferro that his compensation should remain unchanged during his term of office; and that the power of the legislature to change it was absolute and unquestionable. His sureties, therefore, upon well settled principles, must be held to have contracted with reference to the existence of that power when they signed the bonds of their principal, and with the same effect as if the right on the part of the legislature to exercise it had been expressly reserved in the bonds themselves. The cases, therefore, to which we have been referred by the counsel for appellants—deciding that in contracts between private individuals for services to be rendored at a fixed and stipulated compensation, recited in the contract, a surety of a person so employed is discharged if, without the assent of the surety, the remuneration of the principal is changed—have no application to this case. Such was the case of the *N. W. Railway Co.* v. *Whinray*, 10 Exch. 77. And so, with respect to the other cases cited in this connection, it is sufficient to say, without stopping to review them, they are alike inapplicable to the case before us.

Undoubtedly, where the powers and duties of an office are so changed, either by enlargement or diminution, as in effect to create a new and different office, the sureties of its incumbent are discharged. It was so held, in the one case, by the supreme court of the United States in *Miller* v. *Stewart and others*, 9 Wheat. 702; and in the other by the supreme court of Louisiana in *Rowan* v. *Peters and others*, 2 Rob. 479. See also *The Commw'th* v. *Holmes*, 25 Gratt. 771,

and cases their cited. But such is not this case; and the first assignment of error is, therefore, not well taken.

2. The second error assigned is, that if the appellants were not discharged, as they insisted, the circuit court nevertheless erred in not treating as nullities *quoad* the sureties, the acts of the legislature reducing the compensation of their principal, and in not allowing them, as they claimed, credit for commissions on all sales made by him at the rate prescribed by law at the commencement of his terms of office respectively. For reasons already given, we think there is no error in this respect in the decree; and that this assignment of error is not well taken.

3. The third error assigned is, that the circuit court erred in not sustaining the appellant's first exception to the master's report; which was that all the money drawn from the treasury by their principal, during his two terms of office, was drawn on drafts not in the form prescribed by law, and therefore, that they as his sureties cannot be held liable therefor.

It appears that the aggregate amount of money drawn by Taliaferro, was $51,500. His drafts were drawn on the auditor of public accounts, signed by him as general agent, were made payable to his own order, and were approved by the president of the board of directors of the penitentiary. Upon the written order of the auditor they were paid by the treasurer. But they were not certified by the superintendent of the penitentiary, nor countersigned by the governor. The provisions of the statute upon which the exception was based are contained in § 58, ch. 206 of the Code of 1873, and are as follows:

" On the requisition of the board, the general agent shall purchase all materials and other things required for such work, or for the convicts, or for the penitentiary. He may issue his draft upon the auditor of public accounts for the amount of all purchases and expenditures made by him,

upon the requisition of the superintendent, for the use of the penitentiary, and the correctness of which shall be certified by the superintendent, countersigned by the governor."

It is not denied that all the money paid to Taliaferro from the treasury was paid to him in the course of his official duties and for public purposes, and subject to the qualification to be presently alluded to, was paid in pursuance of appropriation acts passed by the legislature. We think, therefore, that even if it was the intention of the legislature by the provisions of the statute just quoted to require all drafts drawn by the general agent to be certified by the superintendent, and countersigned by the governor, the failure of the superintendent to certify and the governor to countersign the drafts drawn by Taliaferro, does not affect the liability of his sureties for the money so drawn by him. They are provisions of law designed for the securety and protection of the State, and to regulate the conduct of its officers. They are merely directory to such officers, and constitute no part of the contract with the sureties. *United States* v. *Kirkpatrick,* 9 Wheat. 720; *Commonwealth* v. *Holmes,* 25 Gratt. 775, and cases cited. The exception was, therefore, properly overruled by the circuit court.

4. The fourth error assigned is, that the circuit court erred in overruling the appellants' second exception to the master's report, and refusing to allow them a certain credit of $15,091.39. · It appears that during the year 1879, leather and other raw material to that amount was purchased by Taliaferro and furnished to the penitentiary, for which he gave the vendors' notes, signed by himself, with the letters G. A. (meaning general agent) appended to his signature, and which notes he has never paid. The appellants insist that this raw material was bought on Taliaferro's individual credit, and for which he alone was liable; that the

State has received the benefit of it; and that in a settlement with the State, the sureties are entitled to be credited with its value.

On the other hand, the State authorities contend that the material was purchased on the credit of the State; and it appears that the State has recognized its liability therefor, and in fact has paid off the said notes, except as to the sum of about $2,000, which still remains unpaid.

We are satisfied from the testimony that the material was bought on credit of the State, and that the State has properly recognized its liability therefor; and that the circuit court did not err in overruling this exception.

5. The fifth assignment of error has been in part disposed of by what has already been said. The master, adopting the theory upon which the alternative proposition contended for by appellants is based—namely, that if they were not released from liability as sureties of Taliaferro, the acts of the legislature reducing his compensation were at least nullities so far as the rights of the sureties are concerned—credited them with the sum of $7,106.81, which had been disallowed by the board of directors of the penitentiary. That sum represents in part the extent to which his compensation was reduced by the acts referred to. The Commonwealth's exception to this item was sustained by the circuit court; and its action in so doing is the subject of this assignment of error.

By an act passed on the 14th day of March, 1878, and which went into operation on the 1st day of July following, the legislature restored the commissions of the general agent of the penitentiary as they were prescribed by section 23, chapter 13, of the Code of 1873. Of the item of $7,106.81, disallowed by the circuit court, the sum of $4,159.62 represented the increased commissions allowed by the act of the 14th March, 1878, and with which the appellants should have been credited. The circuit court, therefore, erred in

wholly sustaining the exception of the attorney-general, and should have allowed the appellants credit for the said sum of $4,159.62.

6. The sixth error assigned is, that the circuit court erred in sustaining the third exception of the attorney-general to the report of the master. In the settlement of Taliaferro's accounts with the board of directors, he was charged with an item of $12,361.64, being the aggregate amount of certain accounts and bills receivable which had been turned over to him for collection by his predecessor in office. This item was stricken out of the account by the master as not chargeable against the sureties; and his action in so doing was the subject of the attorney-general's third exception.

These accounts and bills receivable were for goods sold by the predecessor or predecessors of Taliaferro; and except as to the sum of $2,060.82, which represented uncollectible accounts and notes due by insolvent persons, the Commonwealth's exception was sustained by the circuit court. The statute (§ 57, ch. 206, of the Code of 1873) provides that the general agent and his sureties shall be responsible for the amount of all debts for goods or work contracted with him or under his authority, and for all money received by him as such agent, except as provided in that section. We have been referred to no statute, and are aware of none, making it a part of the general agent's duty to collect accounts or notes for debts contracted with his predecessors. Moneys so collected are, therefore, not covered by the terms of his official bond, and are not chargeable to his sureties; and the circuit court erred in not overruling the Commonwealth's third exception to the master's report.

7. The seventh error assigned is, that the circuit court erred in sustaining the attorney-general's fourth exception to the master's report. It seems that the sum of $1,000

was contributed by certain churches and individuals in this city towards the erection of a chapel for the use of the convicts at the penitentiary. For that purpose the money was paid over to Taliaferro; and the attorney general insists, and the appellants deny, that it is chargeable to his sureties. In their view the master concurred, and so reported. The attorney-general excepted to that part of the report, and the exception was sustained by the circuit court.

It was no part of the general agent's duty to receive or disburse such contributions. It was, therefore, paid over to him without authority of law, and is not chargeable against the sureties; and the circuit erred in not overruling the Commonwealth's exception. See *Leigh* v. *Taylor*, 7 B. & C. 491; *People* v. *Pennock*, 60 N. Y. 421.

8. The eighth error assigned is, that the circuit court erred in sustaining the Commonwealth's fifth exception to the master's report.

It appears that in the year 1879, the sum of $5,000 was paid from the treasury to Taliaferro in excess of the appropriations for the penitentiary for that fiscal year; and that during the years 1876, 1877, and 1878, various sums, aggregating $12,500, were also paid to him, and before the passage of the acts of the legislature appropriating it. It is not denied, however, that as to this last sum the necessary appropriation acts were afterwards passed, and that he received the money in the regular course of his official duties and for public purposes. Both of these items were excluded from the account by the master as against the sureties. The Commonwealth excepted to the report on that ground, and the exception was sustained by the circuit court. We think the first item of $5,000 should have been excluded, and that the last, of $12,500, should have been included in the account against the sureties; and that the circuit court erred in including both. The appropriation

by the legislature of a particular sum of money for a particular purpose must be regarded as tantamount to a declaration on its part that no more than that sum shall be withdrawn from the treasury for that purpose. Indeed, the constitution itself declares that no money shall be paid out of the treasury,·except in pursuance of appropriations made by law (art. 10, § 10); and, as in this case, the said sum of $5,000 was not withdrawn from the treasury in pursuance of law, it is not chargeable to the appellants in the settlement of their principal's·accounts.

9. A similar question is raised by the ninth assignment of error, in which it is alleged that the circuit court erred in including in the account against the sureties an item of $5,000, which was paid from the treasury to Taliaferro, and as to which no appropriation act has ever been passed by the legislature. For that reason the circuit court erred in sustaining the Commonwealth's exception to the master's report, and charging the sureties with that item.

10. The questions raised by the tenth and last assignment of error have been sufficiently disposed of by what has been said in respect to other errors assigned, and need not therefore be further considered.

For these reasons, and in the particulars indicated, the decree of the circuit court is erroneous and must be reversed, and in other respects affirmed.

The decree was as follows:

This day came the parties by their counsel, and the court, having materially considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the decree aforesaid is erroneous in the following particulars, namely:

1. In wholly sustaining the attorney-general's second ex-

ception to the report of Commissioner Evans, in which the said N. C. Taliaferro and the appellants, as his sureties, are credited by certain commissions to the amount of $7,106.81. The exception ought to have been sustained, except as to the sum for which they should have been credited as commissions under the act of assembly, approved March 14, 1878. Acts of Assembly, 1877–8, p. 368.

2. In sustaining the attorney-general's third exception to the commissioner's report, except as to the sum of $2,060.82. The exception ought to have been overruled.

3. In sustaining the attorney-general's fourth exception to the report of the commissioner. The exception ought ought to have been overruled.

4. In wholly sustaining the attorney-general's fifth exception to the report of the commissioner. It ought to have been sustained as to the sum of $12,500 therein mentioned, and overruled as to the sum of $5,000, another sum therein mentioned.

5. In sustaining so much of the exceptions to the commissioner's report by the attorney-general as relate to two drafts, drawn by the said N. C. Taliaferro, as general agent and storekeeper of the penitentiary, dated respectively November 8, and November 12, 1879, each for the sum of $2,500; the said drafts not being properly chargeable against the appellants.

It is therefore decreed and ordered that in the particulars aforesaid the said decree be set aside, vacated and annulled, and in all other respects be affirmed.

And this cause is remanded to the said circuit court for such further accounts or restatement of accounts, as may be proper and necessary and in conformity with this decree; which is ordered to be certified to the said circuit court of the city of Richmond.

DECREE REVERSED.