June Term, 1861.

STATE
v.
MESSMORE.

---

STATE ex rel. ATTORNEY GENERAL vs. MESSMORE.

The constitution requires that a circuit judge shall, at the time of his election, be a resident of the circuit for which he is elected, and that he shall continue to reside therein while he holds that office.

Where, by the creation of a *new* circuit, the residence of a judge of an existing circuit is placed without the limits of the circuit for which he was elected, he must be allowed a reasonable time for removal to his own circuit, before his office can be deemed vacant on account of his non-residence.

And where the office of such a judge has been usurped by a person claiming to hold it under an appointment by the governor, he may, without forfeiting the office, delay his removal until his right to it can be determined in an action of *quo warranto* against the usurper.

Where the act creating the new circuit was published, but was not to take effect until a subsequent day (during the session of the legislature at which it was enacted), it was *held*, that the judge was not bound to take notice of the change or prepare for removal, until the act went into operation.

June Term, 1861.

STATE
v.
MESSMORE.

When a new judicial circuit is created, the first judge thereof must be *elected* by the people.

Prior to such election there is not a *vacancy* in the office to be filled by executive appointment.

As every county is entitled by the constitution to two terms of the circuit court in each year, the counties designated as forming a new circuit must be considered as belonging to the judicial circuits to which they were before attached, until an election of a judge for the new circuit can be held.

Where the act creating the new circuit makes no special provision for an election of the judge, the election should be held, under the general provision made by sec. 93, chap. 7, R. S., on the first Tuesday in April next after the taking effect of the act.

ACTION OF QUO WARRRANTO. The complaint (the substance of which is set forth *ante*, p. 116) charged the defendant with having, on the 11th day of April, 1861, unlawfully usurped the office of judge of the sixth judicial circuit. The defendant answered, 1. That he was, on the 10th of April, 1861, duly appointed by the governor of the state to the office of judge of said circuit "to fill the vacancy" in that office, "created by a change in the boundaries of said circuit," under an act of the legislature approved March 30th, 1861. 2. That on the 10th of April, 1861, the office of circuit judge for the sixth judicial circuit "became vacant, by reason of the fact that Hon. George Gale, elected and acting as circuit judge for said circuit for the term commencing January 1, 1857, and ending December 31, 1862, then ceased to *reside* in said circuit," and that thereupon the governor duly appointed the defendant to the office of circuit judge for that circuit, to fill said vacancy. The answer alleged also that the defendant was at the time of his appointment, and continued to be, a resident of the sixth judicial circuit, and had duly taken and filed his oath of office.

The jury found that Judge Gale was duly elected judge of the sixth judicial circuit for the term of six years from the 31st of December, 1856, and had, in the fall of that year, taken and subscribed the oath of office, which was duly filed, &c.; that he had not resigned nor been removed from said office by address or impeachment; and that he then resided, and for more than four years last past had re-

sided, in the county of Trempeleau; that the defendant *Messmore* was, on the 6th of November, 1860, elected a member of the Assembly of this state for the district composed of the counties of La Crosse and Monroe, for the term of one year from the 31st of December, 1860, and took and subscribed his oath of office as such; that on the 10th of April, 1861, the governor delivered to the defendant a commission certifying that he was thereby appointed judge of the sixth judicial circuit—to hold said office until his successor should be elected and qualified, unless &c.; and that on the next day he took and subscribed the oath of office, and filed the same, &c., and had ever since performed the duties of said office.

At the time of the election of Mr. Gale as judge of the sixth circuit, that circuit was composed of the counties of Crawford, Bad Ax, La Crosse, Monroe, Jackson, Clark, Buffalo and Trempeleau.

By the act approved March 30, 1861, it was enacted that the counties of Crawford, Bad Ax, La Crosse, Monroe and Jackson should thereafter constitute the *sixth* judicial circuit; that the counties of Trempeleau, Buffalo, Pepin, Dunn, Dallas, Chippewa, Clark and Eau Claire should thereafter constitute the eleventh judicial circuit; that certain other counties named should constitute respectively the seventh eighth and twelfth circuits; that the person holding the office of circuit judge and residing in the county of *Trempeleau* was thereby declared to be the judge of the *eleventh* circuit as defined by that act, for the balance of the term for which he was elected; that there should be elected in April, 1862, a judge for said *sixth* circuit, whose term of office should commence on the 1st of January, 1863; and that the governor should appoint a person to the office of judge of the *sixth* circuit, to fill the vacancy created by the change in the boundaries thereof, who should hold his office until the 1st of January, 1863, and until &c. It was also declared that the act should take effect, so far as related to the sixth, eighth and eleventh circuits, from and after the 10th of April, 1861; and as to the other circuits mentioned

in the act, from and after the 1st of October following.  The act was published April 4th, 1861.

Upon the motion for judgment upon the verdict, *S. U. Pinney*, for the state, argued, 1. That the appointment of *Mr. Messmore* was void, unless a *vacancy* existed in the office of judge of the sixth judicial circuit.  2. That so much of the act of April, 1861, as attempted to remove Judge Gale from that office is unconstitutional.  The act increases the number of circuits and creates a *new* circuit, and declares that Judge Gale shall be judge of that circuit, if it be conceded that the eleventh circuit is the *new* one.  But he was not elected for that circuit, and when the legislature has created a new circuit, it has exhausted its power, and has no authority to say who shall be the circuit judge.  "In case of an increase of circuits, the judge or judges shall be *elected* as provided in this constitution."  Sec. 6, art. VII, Const. Therefore if it be said that the sixth circuit is the *new* one, the appointment is void for want of power in the governor to make it.  It is no answer to say that the legislature may change the names of circuits without affecting the titles of the judges to their offices.  (1). In this case the legislature creates a *new* circuit, and attempts to make the judge of the *old* circuit the judge of the *new* one.  Judge Gale could not be legislated into the new office, nor legislated out of office. *State ex rel. Flinn vs. Auditor of State*, 7 Ohio St, 333.  (2.) But if it is claimed that the sixth circuit is the *new* one, and that the act continues Judge Gale in his old office under a new number, and that *Messmore* held the office of judge of the sixth circuit as a new office under an old name, then *Messmore* was ineligible, as the constitution provides " that no member of the legislature shall, during the term for which he was elected, be appointed *or elected* to any office which shall have been created during the term for which he was elected."  3. It cannot be said that Judge Gale's office was vacant because he ceased to be a resident of the circuit for which he was elected.  He was entitled to a reasonable time for removal.  11 Ohio R., 511.

*D. H. Johnson, contra*:

Section 6 of Article VII, authorizes the legislature

to increase the number and change the boundaries of circuits. It is true that no such increase or alteration "shall have the effect to remove a judge from office"; but the act in question expressly *retained in office* the judges whose circuits are affected by its provisions. It may be said that these judges are not retained as judges of the same circuits that they were *elected* for. Such a requirement would be inconsistent with the right of changing the boundaries of a circuit; for after such a change it is not the same circuit that it was before; that is, the judge does not preside over the same territory that he was originally chosen to pre side over. But it is said that the circuit assigned to Judge Gale is *numbered* differently from the one he was elected for. It is surely competent for the legislature to change the name of any subdivision of the state without thereby *removing* the officers of such subdivision; and it is difficult to see how the rights of Judge Gale are affected by merely changing the *name* of his circuit from the "sixth" to the " eleventh." The power to alter the limits and increase the number of circuits implies the right to exclude a judge's residence from the circuit for which he was elected; and the provision that no judge shall thereby be removed from office, can in such case be carried into effect only by assigning to him, for the residue of his term, *one* of the new circuits thus created. The legislature should in such case assign such judge one of the circuits, and provide for filling the vacant judgeship in the other, to prevent the disorder growing out of uncertainty as to which judgeship is filled, and which vacant. In *Ex parte McCollum*, 1 Cow., 550, it was held that the power of the legislature to alter the territorial jurisdiction of justices of the peace, necessarily arose from the constitutional power to create new counties. This case was followed in *The People vs. Garey*, 6 Cow., 642, and *Garey vs. The People*, 9 Cow., 640. See also *The People vs. Morrell*, 21 Wend., 563. In *The State of Ohio vs. Choate*, 11 Ohio, 511, it was held that the division of a county in such a way as to leave the residence of an associate justice outside of the county for which he was elected, vacates his office, unless within a reasonable time he removes into the county;

and a resolution of the legislature declaring his office vacant, and ordering an immediate election to fill the vacancy, was sustained by a majority of the court. When the legislature divides a circuit, and either assigns to the former incumbent the circuit that he resides in or gives him a reasonable time to remove to the other, it certainly cannot be said that such an enactment is so grossly at war with the constitution as to render it impossible to reconcile them; and unless it is so, the court is bound to sustain the act. 5 Blackf., 258; 1 Cow., 550; 5 Mass., 524, 534; 6 id., 401, 417; 12 id., 252; 14 id., 340, 345; 2 Pick., 550, 557; 16 id., 87, 95.

The final clause of the section of the constitution under consideration, is as follows: "In case of an increase of circuits, the judge or judges shall be elected as provided in this constitution, and receive a salary," &c. The provisions of the constitution as to the election of judges are these: Section 7 of Article VII, provides that the circuit judges shall be chosen by the qualified electors of their circuits respectively, and shall be so classified by the legislature that one of them shall go out of office annually for six years, and that thereafter all judges shall be elected for six years. It is manifest that the election provided for in this section is for a full term and not to fill a vacancy during an unexpired term. Section 9 of the same article provides that "when a vacancy shall happen in the office of judge of the supreme or circuit courts, such vacancy shall be filled by an appointment of the governor, which shall continue until a successor is elected and qualified; and when elected, such successor shall hold his office the residue of the unexpired term." From these sections it is manifest that the manner of electing circuit judges provided for in the constitution, is as follows: For a circuit judge for a full term, an election by the qualified electors of the proper circuit; for a vacancy, an election by such electors as soon as one shall be provided for, the vacancy in the meantime being filled by appointment of the governor. The temporary appointment by the governor until an election can be held, is a necessary part of the constitutional system for choosing judges in this state, and is no violation of the provision for the election of judges. In 4

Blackf., 116, it was held that the statute authorizing the board of commissioners of any county in which the office of recorder should become vacant by death, &c., to appoint some person to supply the vacancy until the next general election, did not conflict with the provision of the constitution of Indiana requiring that the recorder should be *elected*, although there was no express provision in the constitution for filling vacancies temporarily by appointment. In *Stocking vs. The State*, 7 Ind., 326, it was held that where the legislature created a new circuit, a *vacancy* in the office of judge of the new circuit followed as a natural consequence, and that the governor might fill the office by appointment, although the constitution provided that the state should from time to time be divided into judicial circuits, and that a judge for each circuit should be *elected* by the voters thereof.

II. If we admit that so much of the act in question as relates to the filling of the judgeships of the several circuits defined by it, was unconstitutional and void, still the office of judge of the sixth circuit became vacant by reason of the non-residence of Judge Gale, and *Messmore* was duly appointed to fill that vacancy. The constitutional requirement that the circuit judge shall reside in the circuit for which he was elected, taken in connection with the express authority of the legislature to alter the limits of circuits, makes it the clear duty of the circuit judge to conform his place of residence to the new limits of his circuit, if such limits are changed during his term of office. The constitution provides (sec. 10, Art. XIII), that "the legislature may declare the cases in which any office shall be deemed vacant;" and sec. 2, chap. 14, R. S., declares that every office local in its character, shall be vacant upon the incumbent's "ceasing to be an inhabitant of the district, &c., for which he shall have been elected, or within which the duties of his office are required to be discharged." It may be said that in order to preserve his rights in the premises, under the Ohio doctrine, upon the present hypothesis, it was necessary to give him a reasonable time within which to establish his residence within the new limits of his circuit. But his non-residence, if intended

by him to be perpetual, created a vacancy in the office the moment it commenced, and the fact that he still absents himself from the circuit, shows that such was his intention. Suppose he had informed the governor that he would not remove into the sixth circuit, would it have been necessary to give him a reasonable time to change his mind, or would the governor be authorized to fill the vacancy at once? In the absence of all proof on the subject, can the court presume that the governor acted prematurely and without sufficient information? The presumption is in favor of his action, and the court will not review the exercise of a discretion by him unless it be shown that he acted corruptly or under a mistake as to the facts. Besides, the legislature had power to declare the cases in which any office should be deemed vacant, and having exercised this power in regard to the sixth circuit, it is not perceived by what right this court can review their action in the premises.

III. The appointment of *Messmore* was not a violation of sec. 12 of Art. IV of the constitution. It cannot be said that the creation of a new circuit is also the creation of the judgeship, when the judgeship has been provided for in advance by the constitution, and would follow the creation of a new circuit without any legislation whatever. The creation of a new district within which the duties of an old established office are to be performed, causes a vacancy in the office—nothing more.

August 28.    *By the Court*, DIXON, C. J.    We fully agree with counsel for the defendant that the constitution requires each of the circuit judges to be a resident of the circuit for which he is elected, and that such residence must continue till the end of his term of office, or so long as he may desire to discharge the duties and receive the emoluments pertaining to the same. This conclusion is so apparent from the language of section 7 of article VII, as hardly to admit the aid of argument in its support. It is: "And after he shall have been elected, he shall reside in the circuit for which he was elected." But we think they are mistaken in supposing that the judge must not also be a resident of the circuit at the time of his elec-

tion. It is possible that the language of section 7, above quoted, and which alone was referred to in argument, would, if considered by itself, sustain this interpretation; but sec- tion 10 of the same article makes it clear that such was not the intention. Its last clause reads as follows: "No person shall be eligible to the office of judge, who shall not at the time of his election be a citizen of the United States, and have attained the age of twenty-five years, *and be a qualified elector within the jurisdiction for which he may be chosen.*" This, in effect though not in words, fixes the place of residence within the circuit at the time of the election, and if possible, renders more clear and unquestionable the object to be accomplished by the language of section 7, which is, that after he is elected, his office shall not be removed or separated from the jurisdiction or circuit over which he is to preside.

Conceding for the present, so far as relates to the eleventh judicial circuit thereby created, that the act (chapter 162, Laws of 1861) by virtue of which the defendant received his appointment, became completely operative from and after the 10th day of April, 1861, as provided in its last section—a matter to which we shall have occasion hereafter to refer—we are brought at once to the consideration of the means by which effect is to be given to section 6 of the same article, in a case where, in the creation of a new circuit, the residence of the judge of an existing circuit is by legislative enactment placed without the limits of the jurisdiction for which he was chosen.

The last named section provides: "The legislature may alter the limits or increase the number of circuits, making them as compact and convenient as practicable, and bounding them by county lines, *but no such alteration or increase shall have the effect to remove a judge from office.* In case of an increase of circuits, the judge or judges shall be elected as provided in this constitution, and receive a salary not less than that herein provided for judges of the circuit court."

Here we have the power clearly given to the legislature, if indeed it would not have existed without, to create new and alter the limits of old circuits, at its pleasure, provided they

continue to be bounded by county lines, but with the express declaration that no such increase or alteration shall have the effect to remove a judge from his office. It was clearly contemplated that this power, the arbitrary and unjust use of which is not to be presumed, would be exercised without regard to the places of residence of the judges of existing circuits. The declaration that it shall not have the effect to remove them from office demonstrates this; for it seems to have been supposed that without such declaration, the tenure of a constitutional term of office might have been disturbed or cut short by a legislative change in the place of residence of its incumbent. It was to guard against this, and strengthen the slender independence of the judiciary, that the declaration was inserted. Aside from the proviso as to the boundary of circuits by county lines, and that they shall be as compact and convenient as practicable, and this limitation as to its effect upon the tenure of existing offices, the power of the legislature is unrestricted. We have then in the case before us to reconcile the existence and valid exercise of this power with the requirement that the judge shall reside within the circuit for which he was elected, and the question is, How shall it be done? We think with the counsel for the defendant, who are supported by the authority of the case of *The State ex rel. Ives vs. Choate*, 11 Ohio, 511, that it must be by giving the judge, whose place of residence is thus lawfully separated from the jurisdiction to which he belongs, reasonable time and opportunity to remove to the circuit for which he was elected, and if he does not, the office becomes vacant under the constitution and the general statute upon that subject. In no other way can full force be given to both provisions of the constitution, and we must therefore accept it as the mode intended by the framers. Judges, in assuming the trusts imposed upon them, must be presumed to submit to the inconveniences which may thus sometimes be occasioned, when the public good requires either the creation of new, or the alteration of the boundaries of old circuits.

And here we may say, what is in part applicable to another branch of the case, that we wholly reject the other exposi-

tion of defendant's counsel, upon which it was claimed, that by virtue of this power of increase and alteration, jurisdictions and judgeships are made itinerant and wandering in their nature—that circuits may be entirely shifted from the district or territory for which they are created, and judges assigned to places entirely outside the jurisdictions for which they were chosen—or as was said, left with no jurisdiction and no mark of office save the name and salary. That this would be contrary to the spirit and intention of the framers of the constitution is manifest from almost every provision on the subject.

In the change of the limits, or increase of the number of circuits, they looked to no obliteration of those which already existed, but contemplated that their identity would be preserved. And however much confusion and uncertainty might be introduced by changes of numbers or names, and the alteration of boundaries, we have no doubt it would be the duty of the courts to ascertain and determine, according to the spirit of the constitution, which were the old and which were the new circuits, or which belonged to this and which to that incumbent. The offices of the circuit judges are spoken of and treated throughout as distinct and independent—each being capable of a separate and certain identification, and each having an incumbent, whose right it is to hold that particular office until the end of the time fixed by law, or other sooner termination of his official duties. If the number of circuits is increased, judges are to be elected as provided in the constitution, to fill the offices thus created. Each judge must reside in the circuit for which he was elected. He must, at the time of his election, be a qualified elector within the jurisdiction for which he may be chosen. Judges may hold courts for each other, and shall do do so when required by law, from which it is to be implied that otherwise their offices are strictly local and separate in their character. These provisions sufficiently refute the position of counsel and establish the intention of the framers.

It is conceded by counsel on both sides, and certainly not doubted by the court, that the circuit known and designated by the act as the sixth, is, with some alteration of bounda-

ries, the same judicial circuit which was formerly known by that name. The number is the same, and it embraces by far the larger portion of the same territory. It is admitted that the term of office of the judge of that circuit will not expire until the first day of January, 1863 ; that he has not resigned, nor been removed by address or impeachment, and that he still resides within the limits of the circuit, as heretofore prescribed by law. This was the position of affairs on the 10th day of April last, when the defendant received his appointment. It follows from what has been said, that the legislature could not, by way of complying with the provision of the constitution that the change of boundaries should not have the effect to remove him from office, transfer him to, or declare him to be judge of the eleventh judicial circuit for the residue of his term, as was attempted by the 7th section of the act; and.that if he was a judge at all, he was at that time the judge of the sixth judicial circuit to which the defendant was appointed. Whether he was then judge of the sixth circuit depends upon the proper application of the principles already stated. If he was, then there was no vacancy, and the appointment of the defendant was void, and conferred no title whatever to the office. The act was published April 4th, and was, by its terms, to take effect as to the sixth, eighth and eleventh circuits therein defined, from and after the 10th day of that month. The defendant was appointed on the 10th. If the office had become vacant, it was by reason of the failure of the judge to remove within the newly prescribed limits of his circuit after the act was to take effect and before the appointment was made. This could not possibly have happened. The appointment was made one day in advance of the time when the law was to become operative, and no opportunity for neglect on the part of the presiding judge was given. And even if it had been made on the very day, and the judge had had his residence or place of business beneath the dome of the capitol, no person will contend that a reasonable time was given him to deliberate as to whether he would remove or not, and much less to do so, though for never so short a distance. As it was, he resided upwards of

two hundred miles from the seat of government, where, by the ordinary methods, several days would be required to transmit the information, and at a considerable distance from the limits of his circuit, as fixed by the act. Under these circumstances, it is still more apparent that he could have been guilty of no unreasonable neglect in taking his residence within it; and that no forfeiture could have been incurred by his failure to do so. No opportunity to comply with the requirements of the law by a change of residence was afforded him.

But it is said that as the act was published on the 4th of April, he must be deemed to have had from that time to receive intelligence and prepare and move. Conceding this to be so, still the time was too short. Six days for a work of that kind are entirely disproportionate to the labor to be performed. No householder could conveniently make the change in that space of time. And though it might by possibility have been accomplished, yet judges in such cases are not expected to hasten like one flying from an enemy, or from some deadly contagion.

We do not, however, hold that the judge was bound to take notice of the change or prepare to remove until the act was to go into actual operation. In these times of fluctuating and uncertain legislation, it would be enough that he prepared for the contingency when it actually happened, and then he must have a suitable and convenient length of time for that purpose. For aught that he knew or might suppose, the law might have been repealed, or further suspended, before the day fixed for its taking effect.

It is again said that the presumption of the law is in favor of the validity of the act of the governor in making the appointment, and that if no sufficient time for removal was given, still we are to presume that the governor was otherwise in possession of facts which he knew made it lawful and proper for him to appoint, as that the judge had signified to him his unwillingness to remove and a determination to abandon the office. A sufficient answer to this perhaps would be, that it is for the defendant to establish his right to hold the office by clear and indisputable evidence of the

facts constituting his title. A still more satisfactory one is, that unlike that in Ohio, the case here made precludes the indulgence of any presumption as to the possibility or existence of facts not stated in the pleadings or shown in proof. The defendant's claim of title is founded solely upon the fact that by reason of the change of boundaries the judge of the sixth circuit did not, at that time, reside within the same. This is directly stated in his first answer, and in the second, the non-residence merely. These are not enough. By the proofs the title is traced directly to the act in question, and the attempt of the legislature to transfer the real judge to the new circuit, and to authorize the governor to appoint another in his stead. Under these circumstances there seems to be no room for speculation, and we must act upon the facts as they appear from the whole case.

But again, it is said that if sufficient time for removal was not given before the appointment, certainly enough has elapsed since; and as the judge has not yet changed his residence, he must now be deemed to have abandoned all claim to the office. If we grant that such subsequent abandonment would relate back and confirm an appointment prematurely made, which is a very questionable proposition, still we do not think, under the peculiar circumstances of this case, that such failure of the judge to remove would constitute such evidence of consent by him to part with his right, as to prevent him from still claiming the office. At first the interference of the legislature, unauthorized though it may have been, in declaring him to be the judge of another circuit, vacating the office which he held and directing the governor to appoint his successor—the appointment by the governor of such supposed successor, and the actual occupancy of the office by him—events which followed each other with great rapidity—precluded, or seemed to preclude, all free exercise of thought or action. His right to hold the office was apparently forestalled and gone. If he removed and took, or attempted to take, possession of the office and discharge its duties, it would very likely have led to occurrences unpleasant to him and unbecoming to the position which he occupied. Soon after, this action was commenced,

by which the legality of the appointment and the extent and nature of his rights, were to be tried and finally determined. Under these circumstances we think he was right in suspending his action, and that he forfeited nothing until the controversy was thus terminated.

We are of opinion, therefore, upon the assumption that the law went into complete operation on the day named, that the appointment of the defendant was void, and that subsequent events have in no way aided the defense.

There are, however, in our judgment, other and more substantial reasons for holding that there was no vacancy, and that the appointment of the defendant was improperly made. We think that for judicial purposes the new circuits created by the act are not yet fully organized—in other words, that, as to them, the act is not as yet completely operative. Our opinion is founded upon the provisions of three sections of the constitution: section six already quoted, section seven of the same article, which provides for the filling of vacancies which may happen in the office of judge of the supreme court and circuit courts, and section eleven, which declares that a circuit court shall be held at least twice in each year in each county of this state organized for judicial purposes; and upon sections ninety-two and ninety-three of chapter seven of the Revised Statutes. Section seven expressly declares that, in case of an increase of circuits, the judge or judges shall be elected as provided in the constitution. This ordinarily would be considered conclusive that in such case there can be no executive appointment of the first incumbent. But an adjudication of the supreme court of the state of Indiana has been found, where it was decided, under a similar provision of the constitution of that state, that in such case an appointment might be made. *Stocking vs. The State*, 7 Ind., 326. Upon the strength of that decision it has been strenuously insisted by counsel, that the power of making temporary appointments is a part of the elective system provided for by the constitution, and that a vacancy, within the meaning of section nine, exists in such a case, as much as when a judge dies or resigns his office. Unluckily for the views of counsel, the learned judges of Indiana, in

their discussion of the question, seem entirely to have passed over the language of the section of their constitution which authorizes the governor to fill vacancies by appointment. It is in all material respects like that of our own. They limited their examination to the question, whether there was in any sense a vacancy, and having concluded that there was, they took it for granted that it was such an one as the governor could fill. That there was a vacancy, in the sense in which they applied the word, we are not inclined to dispute. Certainly, "a new house may be as vacant as one tenanted for years, which was abandoned yesterday." But aside from the requirement that judges of new circuits shall be elected, the question is not whether there is in any sense a vacancy, but whether it is such an one as the framers of the constitution contemplated should be filled by executive appointment. It seems clear to us that it is not—and that they looked solely to vacancies in existing offices, occasioned by the death, removal or resignation of a previous incumbent. Their language is: "Where a vacancy shall happen in the office of judge of the supreme or circuit court, such vacancy shall be filled by an appointment by the governor, which shall continue until a successor is elected and qualified." The use of the word "happen" in this connection, is very significant, and evidently has reference to some casualty not provided for by law, and which could not be remedied by the usual means of an election. The primary principle established by the constitution is, that judges shall be elected, and the power of temporary appointment seems only to have been conferred from necessity, to cure certain defects which are inseparable from the system adopted. In the creation of a new circuit no such necessity exists. The business of our courts is never such that the public would suffer inconvenience by the delay of an election in such a case. It is not a casualty in any sense of the word, but the deliberate act of a legislative body, which may well and conveniently be provided for by the usual method prescribed by the constitution. Upon this subject we are not entirely without authority. The Senate of the United States, upon different occasions, appear to have put the same construction upon

June Term,
1861.

State
v.
Messmore.

like language in the third clause of the second section of Article II of the constitution of the United States. Story's Com. on Const., vol. 3, § 1553; Sergeant's Const. Law, chap. 31, p. 373.

This construction is also sustained by the entire legislation of the state, down to the time of the passage of the act in question. In the formation of the various circuits which have been created since the adoption of the constitution, the legislature have invariably provided that the first judge should be elected.

It was furthermore, no doubt, one prominent motive in providing that judges should be elected, to restrict, as far as possible consistently with the necessities of the public, the patronage of the executive, and it is our duty to construe the constitution so as to carry out that object.

The clause which gives the legislature power to declare the cases in which any office shall be deemed vacant, does not affect the question. It clearly confers no authority by direct act to declare a particular office vacant. The legislature can only by general laws declare under what circumstances existing offices shall be deemed vacant, and it then becomes a judicial question whether these circumstances exist. It cannot directly, and of its own motion, create a vacancy in the office of supreme or circuit judge, which the governor is authorized to fill by appointment.

It follows therefore that no appointment can be made in the new circuits which the legislature, in the exercise of an undoubted power, have seen fit to create. The act makes no special provision for an election, and they fall, therefore, within the general provision made by section 93 of chapter 7, R. S., above referred to, which is, that the first election shall be held on the first Tuesday in April next after the taking effect of the law providing for such election.

The act providing for the circuits must be deemed to have provided for the elections. In the meantime, as each of the counties comprised in them is by the constitution entitled to at least two terms of court a year, the operation of the law is so far suspended, and those counties are severally to be

considered as still belonging to the judicial circuits to which they were heretofore attached.

For these reasons, the judge of the sixth circuit still resides within its limits, and no change of residence has yet become necessary.

Let judgment of ouster be entered against the defendant.