# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## BLAIR, ATTORNEY-GENERAL, V. MARYE, AUDITOR.

### MAY 7TH, 1885.

1. CONSTITUTIONAL OFFICERS—*Attorney-General— Compensation.*—By section 8, article 6, state constitution, the election and commissioning of an attorney-general is provided for, and it is directed that he shall perform such duties and receive such compensation as the law may prescribe. It is not within the power of the legislature itself to withhold from him the salary which is prescribed by law, nor to delegate such power to the auditor.

2. IDEM—*Idem—Idem—Offset.*—The salary of the attorney-general is of constitutional grant, and of public official right, and the doctrine of *offset* cannot be applied to it. It is not liable to attachment, to garnishment, nor to assignment in bankruptcy, and upon principles of *public policy,* it has absolute immunity from detention for debt or counter claims.

3. IDEM—*Withholding salaries.*—The act of assembly passed November 24th, 1884, Acts (extra session) 1884, page 90, requiring the auditor to withhold the salary of any officer who is indebted to the state for money collected by him, or improperly drawn by him during his term of office, until the default is made good, is unconstitutional and void, so far as it affects constitutional officers.

4. IDEM—*Idem—Remedy.*—The officer's remedy for the withholding of the salary attached to his office, is by *mandamus.*

Upon petition of F. S. Blair, attorney-general for four years, commencing January 1st, 1882, asking for a writ of *mandamus* to compel Morton Marye, auditor of public accounts, to pay to petitioner the sum of $833.33⅓, due him at the date of his petition, as his compensation prescribed by law, and for the payment

whereof the general assembly had made appropriation for the months of November and December, 1884, and of January and February, 1885, which petitioner had demanded, but which said auditor refused to pay. To a rule *nisi* served on said Marye the latter demurred, and answered the petition. In his answer, he set up that the petitioner had, during his term of office, drawn without authority of law, the sum of $5412.87 from the treasury, whereof nothing had been repaid, and that the petitioner, by the act of 24th November, 1884, could not receive any salary until said sum so overdrawn had been repaid. To this answer, the petitioner demurred and replied.

The details are set forth in the opinion.

*John H. Guy* and *W. W. Field*, for the petitioner.

*W. R. Meredith*, for the respondent.

FAUNTLEROY, J., delivered the opinion of the court.

Upon the petition of F. S. Blair, attorney-general of Virginia, representing that, at the regular election held on the fourth Thursday in November, 1881, he was duly elected to the office of attorney-general of the state of Virginia: that he has been duly commissioned, and has qualified as such in accordance with the constitution and laws of Virginia; that he has entered upon the discharge of his official duties as such attorney-general; that his term of office commenced on the 1st day of January, 1882, and continues until 31st of December, 1885; that he is a constitutional officer, made such by Article VI, section 8, of the constitution of the state; that the constitution provides that he shall receive such compensation as may be prescribed by law; that at the time of his qualification his compensation as such attorney-general prescribed by law was $2500 per annum; that it was payable annually; that the general assembly by its appropriation bill of the public revenue

for the fiscal years of 1884 and 1885, appropriated and set apart the said sum of $2500 for his compensation; that the attorney-general is peculiarly a constitutional officer; that there is now due to him his salary for the months of November and December 1884, and January and February, 1885, amounting to $833.33⅓; that he made application to the auditor of public accounts of the state of Virginia, whose duty it is, by law, to issue his warrant on the treasurer of the state for the payment of his said salary; yet the said auditor refused and still refuses to issue his warrant on the treasurer for the payment of the same, or any part thereof; it was ordered by this court on the 10th day of March, 1885, that Morton Marye, auditor of public accounts of the state of Virginia, do appear here on the 17th of March, 1885, and show cause, if any he can, why the commonwealth's writ of *mandamus* should not be awarded to the petitioner, to compel the said auditor to issue his warrant on the treasurer of Virginia, to pay his said salary to petitioner, for the months of November and December, 1884, and January and February, 1885, with interest thereon from the date of its unlawful detention; and for the payment of such future salary as shall become due and payable to petitioner as said attorney-general until the expiration of his said term of office.

To this rule the said auditor of public accounts, Morton Marye, made return, admitting the due election and qualification of the petitioner, as attorney-general of Virginia, and that the compensation prescribed by law for the said officer is $2500 per annum, payable monthly; that the general assembly has appropriated the said sum for the salary of the said attorney-general for the years 1884 and 1885, respectively; and admitting that he had refused to draw his warrant for petitioner's salary, as claimed, for the months of November and December, 1884, and for January and February, 1885; and that he so withholds the said salary, by virtue of an act of the general assembly, passed November 24th, 1884, making it unlawful for the auditor of public accounts to issue his warrant to petitioner for his

said salary until the said petitioner shall have made good to the state the sum of $5412.87, which the special committee of the house of delegates appointed to enquire what sums have been drawn from the treasury by the attorney-general, F. S. Blair, other than his salary, reported overdrawn by him, and due the state.    To this return by the said auditor of public accounts, the petitioner demurred; and in said demurrer the said auditor joined, and to said return the petitioner made replication, in which he replied, that the said return was not only insufficient in law, but that, in point of fact, there is no indebtedness on his part to the state, and no report to that effect from the said special committee *of three;* that the said committee did sit for several days, and took proof in said regard, and failing to agree, two reports were made from said committee—*a majority* report, relied on by the auditor, claiming an indebtedness against the petitioner, while the *minority* report, which is filed with the replication, shows there is no such indebtedness, and that petitioner had not been paid any moneys which he was not entitled to receive by law, and upon the warrant of the auditor of public accounts; that these two reports from this special committee of investigation were returned to the house of delegates, and were not approved or acted upon by the said house of delegates, which alone had ordered the investigation; and that the general assembly adjourned *sine die* on December 1st, 1884, nearly two weeks after said reports had been made, without any action upon them whatever; that the powers and existence of the said special committee of three, terminated with the final adjournment of the house appointing it; and that the said majority report, relied on by the auditor, became *ipso facto* null and void, and of no effect whatever; and that the non-action of the legislature upon the elaborate investigation and voluminous evidence taken and reported in the premises, affords strong presumption that there is no indebtedness on the part of the petitioner to the state, and no reason for any action in the matter. Upon these pleadings and facts presented in the record, this court has now

to test the legality of the action of the auditor in withholding
the salary of a constitutional officer of the state government of
Virginia, for an *assumed* indebtedness, under and by authority
of the act of the general assembly, found on page 90 of the Acts
of the last of the extra sessions of 1884, entitled "an act to
provide for securing to the state money due to it by any of its
officers."

Section I. enacts, "that whenever any officer of the state is
indebted to the state for money collected by him, or improperly
drawn by him, or upon his order, from the public treasury
during his term of office, and after demand for the same by the
auditor, continues in default in the payment of the same, it shall
not be lawful for the auditor to issue to the said officer a war-
rant for, nor for the treasurer to pay, any part of the salary due
or to become due to such officer, until he shall make good his
default.   The officer whose salary is thus withheld, may, how-
ever, file his petition in the circuit court of Richmond city,
making the auditor a party thereto, and praying the payment
of his salary.   The auditor shall make answer to this petition,
and the proceedings *shall* be conducted as a suit in chancery is
conducted, except that there need be no proceeding at rules.
Upon the proof taken and read in the cause, the court shall de-
cide the fact of indebtedness, and the right of the officer to
draw his salary, or the right of the state to credit the same
upon the indebtedness of the officer, and a judgment may also
be rendered against the officer for any indebtedness that may
exist in excess of the amount of the salary then due, and for
the application by the state of such salary as may thereafter ac-
crue to the payment of the debt."      *      *      *

Applying to this act of the general assembly the touchstone
of the constitution of Virginia, we find, that in its express
terms, as well as in its practical operation, it contravenes one
of those great and sacred rights which "do pertain to the good
people of Virginia, and their posterity, as the basis and founda-
tion of government."   Article I., section 13, of the constitution

of Virginia declares, "that in controversies respecting property, and in suits between man and man, the trial by jury is preferable to any other, and ought to be held sacred."

The act under review, after putting the salary and constitutional compensation of any and every constitutional officer of the state, at the good or ill-will of a ministerial basement officer, whose tenure of office is, every two years, dominated by a casual majority of the legislature, permits the officer whose salary is thus withheld, to file his petition in the circuit court of Richmond city; and imperatively commands, that "the proceedings shall be conducted as a suit in chancery is conducted, except that there need be no proceeding at rules." A suit in chancery is conducted (even where delay is not designed, nor is an object,) by all the intricacies of systematic pleadings and proofs, and arguments, and submission to and consideration by the court, *without a jury*—unless the chancellor may need and choose to order the intervention of one to aid and inform his judgment and conscience. It matters not that the petitioner *may* ask for, and probably obtain, a jury, from a considerate and conscientious judge; under the express mandate of this act, his absolute and constitutionally guaranteed right to *demand* a jury, is taken away; and hangs upon the permission or refusal of the judge. The best and the purest judges—like all other men—pass away; and their high places may be, as historically once in the English judiciary, filled by the versatile minions of power, and the pliant partizans of dominant faction; and the evil portents of the day admonish us that history repeats itself.

The office of attorney-general of Virginia, is of *constitutional* creation, and not of *legislative* enactment; and the salary of the office, though left to be fixed and appropriated by law, is within the express protection of the constitution. By Article VI, section 8, under the head of the judiciary department, of the constitution of Virginia, it is provided, "At every election of a governor, an attorney-general shall be elected by the qualified vot-

ers of this commonwealth. He shall be commissioned by the governor, perform such duties and receive such compensation as may be prescribed by law, and shall be removable in the manner prescribed for the removal of judges." The office, with its constitutional requirements for compensation, is vested in the attorney-general elected by the people for a term of *four* years. It is not founded on contract, but on constitutional grant, which implies a prohibition of legislative authority to withhold the salary of the office which has been "prescribed by law." In the case of *Foster* v. *Jones*, 79 Va. 642, Judge Hinton, speaking for this court, says: "We think it may fairly be assumed in the outset to be an undeniable proposition, that the two branches of the legislature, as the direct representatives of the people, have the right, when no restrictions have been imposed upon them, either in express terms, or by necessary implication, by the constitution, to create and abolish offices accordingly as they may regard them as necessary or superfluous. And that they may also, under like circumstances, deprive the officers of their salaries, either directly by removing them from office, or indirectly by so changing the organization of the departments to which they are attached as to leave them without a place. But, of course, this power in the legislature cannot be construed to extend to any of the various classes of officers which are known as constitutional officers." (*Loring* v. *Auditor*, 76 Va. 942; *Commonwealth* v. *Gamble*, 62 Penn. St. Reps. 343; *Fletcher* v. *Peck*, 6 Cranch, 87.) The legislature *must* prescribe some compensation to the attorney-general; and when prescribed and fixed by law, the behest of the constitution is that he "*shall receive* such compensation as may be prescribed by law." It is not within the power of the legislature to withhold it; and *a fortiori*, they cannot depute such a power to the *auditor*. To allow such a power would be to annul the will of the people expressed in the constitution, and to place the organized existence and integrity of the constitutional government of the state at the feet and caprice of revolutionary domination

and *party* supremacy in the legislative department of the government. If, thus, they can withhold the salary of *one* constitutional officer, according to the disposition of the legislature or auditor towards him, they can make the tenure of all the functionaries of the government, *executive* and *judicial*, depend, absolutely and *abjectly*, upon their will and humor, and stop the wheels of government at the bidding of passion, prejudice or *party.* *Vide Swann* v. *Buck,* 40 Miss. 302; *People* v. *Bangs,* 23 Ill. 527; *People* v. *Gary,* 6 Cowan, 642; *McCullow's* case, 1 Cowan, 550; *State* v. *Menmore,* 14 Wis. 163. The authorities all recognize and establish the doctrine, that a constitutional office is beyond the reach or control of legislative authority, except in the manner and to the extent expressed in the constitution; and that where a salary or compensation is provided by the constitution, it is an incident to the very office itself, and cannot be detached from it. The right to the salary follows the office, as shadow follows the substance. *Baxter* v. *Brooks,* 29 Ark. 201; *People* v. *Tieman,* 30 Bar. 193 and 359; *Cowdin* v. *Huff,* 10 Ind. 86; *Dorsey* v. *Smythe,* 23 Cal. 23; *Stratton* v. *Dalton,* 23 Cal. 51; *State* v. *Menmore,* 14 Wis. 172; *Carroll* v. *Siebentholder,* 37 Cal. 195.

In the *State* v. *Steele,* 57 Texas, 204, it was decided that the legislature itself, has no power to refuse to pay the salary of a constitutional officer, where the constitution directs the legislature to fix the salary.

The case of *Fant* v. *Gibbs,* 54 Miss., was a case where district attorney Fant compelled the auditor (Gibbs), by *mandamus*, to issue a warrant on the state treasury for a month's salary, for which the auditor had refused to issue his warrant.

The provision of the constitution of Mississippi, was almost identical with that of the Virginia constitution, in Article VI. It provided, " There shall be an attorney-general elected by the qualified electors of the state, * * * whose term of service shall be four years, and whose duties and compensation shall be prescribed by law." On page 410, the court declares, that,

whether duties or salary be withheld by the legislature, it is wholly at war with the genius of our institutions; and proceeds to say: "It would be an exceedingly delicate matter for this court to declare that the compensation provided for any officer was not suitable, and we would certainly never do so where the salary, however low, had been fixed on a basis deemed by the legislature to be sufficient; but where it was clearly not so fixed, but was a mere partisan device to get rid of an obnoxious officer, it might be our duty to interfere.   Suppose, for instance, that a legislature, dominated by a political party different from that of the officers belonging to the state department in the capitol, should reduce their salaries to five dollars per annum, in such a case we might feel compelled to interfere."   On page 414, the court says: "If the legislature takes away from that officer (the district attorney), chosen by the qualified electors for the term of four years, all territory, so that there is no place where he can perform the duties annexed by law to the office, *or if it withdraws compensation*   *   *   *., such legislation would conflict with the constitution.   If his compensation is cut off, the legislature has *starved him* out, and done *by indirection* what it would not be pretended could be done *directly."*   On page 415, the court says: "It seems to me impossible to put any other construction on the act of the legislature, in the particulars referred to, than that it is an indirect *ouster* of Fant from his office as district attorney."   And, on page 416, the court says: "The reduction of the salary to one hundred dollars, was part and parcel of the plan to evade the constitution;   *   *   *   while the legislature carefully refrains from declaring, outright, that he shall no longer be district attorney, it accomplishes the same result by indirection."   The court decided that Fant was entitled to his salary, and awarded a *mandamus* to compel the auditor to pay it.   The abolition of fees compensation or salary, is a virtual abolition of the office itself—*vide* Smede's (Miss.) Digest, sect. 153.   In *Warner* v. *The People,* 2 Denio, N. Y., 281, it was declared, that when the legislature assumes the power to

take from a constitutional officer the substance of the office itself (whether the term, duties or compensation), it is not a legitimate exercise of the right to regulate the duties or emoluments of the office, but is *an infringement upon the constitution*. In the case of *State* v. *Duval*, 26 Wis. 414–15, it was expressly adjudged, that the emoluments of an office cannot be *detached* from it. The same doctrine is sustained by the principle and reasoning of the court in *Warner* v. *People*, 2 Denio, 272; *State* v. *Hastings*, 10 Wis. 525; *McCabe* v. *Muzzlechelli*, 13 Wis. 478.

In the supreme court of North Carolina, in the case of *Cotton* v. *Ellis*, 7 N. C. (Jones' Law), Chief Justice Pearson delivered the unanimous opinion of the court, and declared that while, in some instances, the legislature may reduce or increase the salaries of such officers as are not protected by the constitution, during their term of office; yet, it cannot deprive them of *the whole*. "A statute which reduces a salary during the term of office, and one which takes away the salary altogether, stand on a different footing; for, in the latter case, the *object* would evidently be to *starve* the incumbent out of his office; and thereby do, indirectly, what could not be done directly. So, to make applicable the remarks in the case of *Hoke* v. *Henderson*, in which there seems to be much force, that such indirect legislation is as obnoxious to the charge of being unconstitutional, as an act directly depriving one of his office. Such legislation would place the legislature in this attitude: ' We mean to abolish the office: if we have not the power to do so, then we mean to deprive the present incumbent of his office; if we have not the power to do that, then we mean to take away his salary.' " The *mandamus* in this case was made peremptory, compelling the issuance of a warrant upon the public treasury for the payment of the salary. The election of officers by the people, as prescribed in the constitution, is a sacred right; and any attempt to take it away by starving an incumbent, by withdrawing his salary, and so compelling the officer to vacate his office, is in violation of the constitution, by indirection or evasion,

which calls for the interference of the courts; whose duty it is to test every law by the constitution. *People* v. *Ball*, 46 N. Y. 57; *Brady* v. *Howe*, 50 Miss. 621; *O'Leary* v. *Adler*, 51 Miss. 33; *Cotton* v. *Ellis*, 7 Jones, (N. C.) 545; *King* v. *Hunter*, 6 Amer. Rep. 756; *Barney* v. *Baltimore*, 6 Wall. 288; *Rison* v. *Farr*, 24 Ark. 166; *Conner* v. *City of N. Y.* 2 Sand R. 369, 370.

"An office" (says Kent, vol. 3, p. 434,) "consists in a right, and correspondent duty, to execute a public trust, and to take the emolument." (So also, Crim. Digest, vol. 3, p. 117.) The salary and perquisites attach to public offices on grounds of public policy. *People* v. *Miller*, 24 Mich. 458.

The legislature has no power to put a constitutional officer in such a situation that he cannot hold his office, and discharge its duties, until the constitutional term has expired. *Vide, People* v. *Gary*, 6 Cowan, 644; *Ex parte McCullom*, 1 Cowan, 550; *Comm.* v. *Gamble*, 62 Penn. Stat. (B. F. Smith), 343; *People ex. rel. Ballou* v. *Dubois*, 23 Ill. 547; *Lore* v. *Bachr*, 47 Cal. 367.

The public service is protected by protecting those engaged in performing public duties; and this, not on the ground of private interest, but upon the necessity of securing efficiency in the public service, by seeing to it that the compensation provided for its performance, shall be received by those who are to perform the work; but the *withholding* the salaries and emoluments of constitutional public officers, would prove hurtful and even disastrous to the public service.

The auditor, in his return to the rule *nisi*, "avers that chapter 98, of acts of extra session, 1884, is a plain and adequate remedy sufficient to afford the said petitioner all the relief necessary to his case: " but the answer is that the attorney-general would be *starved out of his office* before he could get a trial of the case in the circuit court of the city of Richmond; and even after a judgment in that court, an appeal to this court might not, and in its turn, could not, be reached before the termination of his term of office. What source of maintenance would the attorney-general have during the pendency of his

suit in the inferior and appellate courts, under the act of assembly invoked by the auditor for the justification of his conduct?

That *mandamus* is the proper remedy in this case, cannot be seriously controverted. The Code of Virginia, 1873, chapter 156, section 4, page 1049, gives the remedy by *mandamus* in *all cases* in which it may be necessary to prevent a failure of justice. And this court, in *Lewis* v. *Whittle*, 77 Va. 415, (Judge Lacy delivering the opinion) says, that *mandamus* should be allowed whenever there is a right of which one is dispossessed, and he has no adequate remedy. *Wise* v. *Bigger*, 79 Va. 269; *Town of Danville* v. *Blackwell, Judge*, ante p. 38.

The following decisions are express adjudications that *mandamus* is the proper remedy in cases like this, although a remedy by statute may exist:

*Black* v. *The Auditor of the State*, 26 Ark, 238; *Reynolds, Auditor*, v. *Taylor*, 43 Ala. 420; *Dorsey* v. *Smythe*, 23 Cal. 25–51; *State* v. *Weston*, 4 Nebraska, 219–244; *State* v. *The Auditor*, 33 Miss. 291; High on Ex. Rem. sec. 104; *Page* v. *Harden*, 8 (B. Mon.) Ky. 648.

The entire salary of the attorney-general of Virginia is now withheld from him by the auditor of public accounts; and has been so withheld since October, 1884; and the said auditor expressly avers in his return, that he will continue to withhold the salary now due and to become due to F. S. Blair, until the money now owed by the said petitioner to the state (as *he assumes* and alleges) shall have been fully paid and discharged, as by law he is required to do. Thus the attorney-general, who is the constitutional adviser of the executive of the state, and the law-officer of the commonwealth in the state and federal courts, and whose services are constantly and imperatively indispensable to the public business and interests of the state, is disabled by the conduct of the auditor from the performance of his official public duties, and is virtually ousted from his office by an act of the general assembly of Virginia, which authorizes and instructs a mere ministerial officer to assume and exercise *judi-*

*cial functions,* in passing judgment and inflicting an ignominious
and baneful punishment, upon any or all of the constitutional
officers of the state government, whenever and *however* he shall
be thereto impelled, even to the extremity of a virtual destruc-
tion of the state government.

It is not pretended by the auditor, that the attorney-general
has overdrawn *his salary;* but he makes the dangerous assump-
tion of withholding *his salary* as attorney-general, on the ground
of. alleged indebtedness to the state in the matter of fees and
compensation allowed to the petitioner by the governor and the
auditor himself, for extra official services as an attorney-at-law;
and which were paid to him on the warrants drawn by the
auditor for the same, according to law. The services and sal-
ary of a public officer are founded in constitutional grant, and
not in *contract;* and they have none of the affinities or liabili-
ties under the law of contract. The salary of the attorney-
general is of constitutional grant and of public official right;
and the doctrine of *offset* cannot be applied to it, as the auditor
asserts a right to do in this case. It is not liable to *attachment,*
nor to be *garnisheed;* nor to assignment in bankruptcy, and,
upon principles of *public policy,* it has absolute immunity from
detention for debt or counter-claim. *The Auditor* v. *Green Ad-
ams,* 13 Ky. Rep. (B. Monroe) 150–1; *The Auditor* v. *Cochran,*
9 Ky. 8; *Divine* v. *Harvey,* 7 Monroe (Ky.) 439; *Arbuckle* v.
*Cowan,* 3 Bos. & P. 328; *Bliss* v. *Lawrence,* 13 N. Y. (Sickles)
444; *Browning* v. *Bitts,* 8 Paige, 568; *McCowan* v. *Rosheimer,*
1 Clarke's Ch. 144; Daniel on Attach. and cases there cited;
*Flosty* v. *Odlaw,* 3 T. R. 681; *Lidderdale* v. *Duke of Montross,*
4 T. R.

In the supreme court of Maryland, (in case of *Thomas* v.
*Owens,* 4 Maryland,) the court say: "The question is, have the
people given their consent to the payment of the *salary* of the
comptroller? That they have done so, is palpably manifest.
They have said he 'shall receive an annual salary of $2500.'
They have not merely said he may *claim* such a sum; but, em-

phatically, that he '*shall receive*' it. It is impossible for human language to be less ambiguous or more positive. The people in their organic law—which is paramount to all other law— have not only given their *consent*, but they have imperatively issued their command, that the particular officer '*shall receive*' it. How is their will obeyed, if it be within the power of the treasurer, or anyone else, to withhold it from caprice, unfaithfulness to duty, or from *mistaken judgment?* To allow of such a power in that officer, would be to put him above the *constitution*, whose creature he is. It would be to invest him with authority to annul the *sovereign* will—in fact, to stop the wheels of government, and reduce things into the wildest confusion. The constitution has said the officer '*shall receive*' his salary, and this *fiat* of the supreme will is not to be nullified by the mere *ipse dixit* of a mere *ministerial* officer—for such, and none other, is the treasurer. An opposite interpretation would countenance this paradox:—that a *co-ordinate branch* of the government could stop its whole machinery, *by refusing to pay the salaries of those upon whom is devolved the discharge of the duties of the other branches.*    *    *    *    It would be giving to the legislature a practical and real omnipotence, with the same breath which professes to restrict their powers within (constitutional) limits. It is prescribing limits, and declaring that those limits may be passed at pleasure." (1 Cranch, 178.)    "Now, it is presumed, it would not be contended by any one, however hazardous, that if the legislature were to pass an act *diminishing* the salary of the *governor*, or of any other officer whose salary is fixed by the constitution, that such an exercise of power would be rightful and constitutional. If it be not competent to the legislature to take away *a part*, by what process of reasoning can it be maintained, that they can take away the *whole?*"

But if it be admitted, for the argument, that the act of the general assembly referred to by the auditor as the authority for his withholding the salary of the attorney-general, does not encroach on constitutional rights, and assume to exercise *judicial*

function, still, there is nothing in the act which can justify or authorize the act and attitude of the auditor in *assuming* that the petitioner is indebted to the state on any account.   The act itself does not so declare or imply; and there has been no act or declaration by the legislature ascertaining the fact, and directing suit or other proceeding against the attorney-general for any indebtedness; and the replication of petitioner to the auditor's return, denies the fact of any indebtedness to the state on the part of petitioner, and shows, by necessary and pregnant inference, that the legislature, after stringent, searching and severe investigation, so admitted, by their total non-action and significant silence.

The assumption of the auditor is wholly unwarranted by the act, and is unsupported by the facts of the case.  The language of the act (which, being punitive and ignominious, must be literally and critically construed), is, " Whenever any officer of the state *is indebted* to the state," &c.   Who is to adjudge and define that indebtedness?   And must it not, of legal necessity, be confined only to an ascertained, liquidated or admitted indebtedness?   Will not anything beyond this trench upon the *judicial* department, and be the exercise of *the essence* of *judicial function?*   The auditor, in his return says, " the said petitioner has, improperly and without authority of law, drawn from the treasury, during his term of office, the said sum of $5412.87."   He does not explain how this *is possible,* under the system of guards, and checks and balances, used in the payment of money out of the treasury of the state; but the record in this case shows that every dollar paid to the attorney-general has been paid *upon the warrants* of the auditor, and after certificates from the clerks of this court, and of the circuit court of Richmond city, and the Supreme Court of the United States, *according to law.*

The auditor now assumes to make the act of assembly *ex post facto* in its application, and to go back and behind of the *audit* and *warrants* of himself and of his predecessors in office, from

the beginning of the official term of the attorney-general, January 1, 1882; and, by his own adjudication, *recoup* allowances made to the attorney-general by the auditor's warrants upon the treasurer for each and every account and item.

The fact is, that if any money has been paid to the attorney-general "*improperly*," upon the *warrants* of the auditor, on any account whatever, there cannot thereby be any indebtedness of the attorney-general to the state; it would be only a matter of responsibility of the auditor himself, and his sureties on his official bond.    Will he withhold his own *salary* and sue the state for it in the circuit court of the city of Richmond, in super-serviceable obedience to this act of the general assembly, under which he justifies his withholding of the salary of the attorney-general of Virginia?

On page 172 of House Journal, extra-session, 1884, it appears, that "No. 148, house engrossed bill to provide for securing to the state money due to it by any of its officers, was * * taken up, out *of its order* on the calendar, and passed." And that next, and immediately thereafter, the correlative act, "No. 147, house engrossed bill to provide *for filling a vacancy in the office of attorney-general,* was * * * taken up *out of its order* on the calendar, and passed."

It was stated in the argument, and admitted by the eminent and able counsel on both sides of this case at bar, that General *James G. Field,* the distinguished and honored immediate predecessor of petitioner, in the office of attorney-general of Virginia, had placed exactly the same construction upon the law regulating his fees of office, and had drawn from the treasurer of the state the same fees of office as Attorney-general Blair had done, upon the proper certificates of the clerks of courts, state and federal, and upon the audit, allowance and warrants of the auditor of the state; that he is in exactly similar case with petitioner, his successor.

It is, we think, abundantly clear, from the record, that there can be no possible legal or moral wrong in the acceptance of

these fees of office by either Attorney-general Field or Attorney-general Blair, as they were paid to them, and they accepted them, under a claim of right, and under the construction and practice of the law, placed on the statutes by the clerks of the courts, *the auditor of public accounts,* and the treasurer of the state. They *all* acted conscientiously, in what they believed to be the discharge of official duty and legal right.

We are of opinion that the respondent, Morton Marye, auditor of public accounts of Virginia, has not made a good and sufficient return to the rule *nisi;* that the demurrer to the said return be sustained; and that the rule must be made absolute; and the *mandamus* issue according to the prayer of the petition.

Let a peremptory *mandamus* issue.

RICHARDSON, J., concurred in the opinion.

HINTON, J., said he did not concur wholly in the opinion, but did concur in awarding the *mandamus,* on the ground that the attorney-general is a constitutional officer, and cannot be deprived of his salary during his continuance in office.

LEWIS, P., dissented.

LACY, J., dissenting, said:

I am of opinion to deny the prayer of the petitioner in this case.

The manner of paying salaries to the officers of the government is within the province of the legislature. The constitution provides for the office of attorney-general, and the way in which he may be removed from office, and he can be removed in no other way. But the method by which his salary is paid is prescribed by law, and this prescription of the law is subject to amendment, and alteration, as the wisdom of the legislature may suggest, for the public good: provided such amendments

do not violate any provision of the constitution, in letter or in spirit.

The act in question does not take away the salary of the attorney-general. It provides for the case of a public officer who in collecting his salary, or other allowances provided as compensation for his public services, may, by overdraws or other erroneous collections from the commonwealth, have become indebted to the commonwealth. The determination of any questions which may arise in such a case is not left to the determination of the auditor, but is submitted under the act of assembly here drawn in question, to be judicially made by the circuit court of Richmond, which is the tribunal designated by law for the trial and determination of suits for or against the commonwealth. The act in question does not violate either the letter or the spirit of the constitution, and should be sustained in this court, as coming within the range of the legislative power.

MANDAMUS AWARDED.